UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA R. JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. |
| v. | ) | |
| | ) | DEMAND FOR JURY TRIAL |
| NANTICOKE HEALTH SERVICES, INC. | ) | |
| and NANTICOKE MEMORIAL HOSPITAL, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Now Comes the Plaintiff, Barbara R. Johnson, by and through her undersigned attorneys,

Eric M. Andersen and H. Alfred Tarrant, Jr., and hereby brings this action against the

Defendants, Nanticoke Heath Services, Inc. and Nanticoke Memorial Hospital, Inc. (hereinafter

"Defendants" ), and as for her causes of action states as follows:

### JURISDICTION

1.      Plaintiff alleges that Plaintiff's claims " relate to" an "employee welfare benefit

plan" as defined by ERISA, 29 U.S.C. § 1001 *et. seq.* and that the subject Plan (attached as

Exhibit A to the Complaint) constitutes a "plan under ERISA." Therefore, Plaintiff alleges that

this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e).

2.      Venue is proper within the District of Delaware pursuant to 29 U.S.C. §

1132(e)(2) because the acts complained of have occurred within this District.

### PARTIES

3.      Plaintiff, is, and at all relevant times was, a resident of the State of Delaware.

4.      Plaintiff alleges upon information and belief that Defendants, are, and at all

relevant times were, corporations authorized to transact and transacting the business in the State

of Delaware, and were the Claims Administrator for the Amended and Restated Unfunded

Deferred Compensation Plan (the "Plan"). See the Plan Document attached as Exhibit A to the

Complaint.

FACTUAL BACKGROUND

5.      The Defendants are tax-exempt organizations which operate Nanticoke Memorial

Hospital and affiliated medical centers and outpatient services in Sussex County, Delaware.

6.      The Defendants administer the Plan which provides a supplemental retirement

benefit, in addition to the Claims Administrator's tax qualified retirement arrangements, to its

former CEO and President – Edward Hancock.

7.      Mr. Hancock terminated his employment with the Defendants in November 2004.

8.      Mr. Hancock is divorced and a portion of his deferred compensation benefits is

distributed directly to his former spouse – the Plaintiff. See Ancillary Stipulation and Order

attached as Exhibit B.

9.      The Defendants paid benefits under the Plan to Plaintiff from February 18, 2005

to April 17, 2006 without withholding FICA taxes from distributions.

10.     On April 18, 2006, Defendants started withholding FICA taxes from Plaintiff's

benefits because the Defendants mistakenly did not report the vesting of the unfunded benefits

for purposes of FICA taxes while Mr. Hancock was employed with the Defendants. On January

22, 2007, Defendants withheld addition FICA taxes related to the distributions from February 18,

2005 to April 17, 2006. Because the FICA tax was capped and Mr. Hancock was receiving a

salary above the cap while the unfunded benefits were vesting, he was employed by the

Defendants and married to the Plaintiff, both Mr. Hancock and the Plaintiff would not have been

subject to any additional FICA tax liability when the benefits vested or when the benefits are

distributed.  See Exhibit C attached to Complaint.

11.     Because the Plan documents do not provide for a process to dispute the improper withholding of FICA taxes, all administrative remedies had been exhausted.

## FIRST CAUSE OF ACTION

### FOR RECOVERY OF PLAN BENEFITS
### PURSUANT TO 29 U.S.C. § 1132(A)(1)(B)

12.     Plaintiff incorporates those allegations of the Jurisdiction, Parties, and Factual Background sections as though set forth in full in this cause of action.

13.     Under the terms of the Plan and Ancillary Stipulation and Order, Defendants were obligated to provide Plaintiff with benefits.  Defendants failed to provide all such benefits.

14.     Reduced benefits to Plaintiff constitutes a breach of the Plan and the Ancillary Stipulation and Order .   Plaintiff seeks reimbursement and compensation for any and all benefits she would have received as a result of Defendants' failure to provide benefits in an amount presently unknown but to be set forth at the time of trial.

15.     Defendants have arbitrarily and capriciously breached the obligations set forth in the Plan and the Ancillary Stipulation and Order.  Defendants have arbitrarily and capriciously breached their obligations under the ERISA policy to provide Plaintiff benefits even though Plaintiff's benefits are covered under the terms of the Plan.

16.     As a direct and proximate result of the aforementioned conduct of Defendants in failing to provide benefits to Plaintiff, Plaintiff has been damaged in an amount equal to the amount of benefits to which Plaintiff would have been entitled under the terms of the Plan.

17.     As a direct and proximate result of the aforesaid conduct of Defendants in reducing benefits under the Plan, Plaintiff has suffered, and will continue to suffer in the future,

damages under the Plan, plus interest and other economic and consequential damages, for a total amount to be determined at the time of trial.

18.    Plaintiff is entitled to benefits and prejudgment interest at the appropriate rate.

## SECOND CAUSE OF ACTION

### FOR AN AWARD OF ATTORNEY'S FEES AND COSTS
### PURSUANT TO 29 U.S.C. § 1132(G)(1)

19.    Plaintiff incorporates those allegations of the Jurisdiction, Parties, and Factual Background sections along with the First Cause of Action as though set forth in full in this cause of action.

20.    29 U.S.C. § 1132(g)(1) authorizes this Court to award reasonable attorney's fees and costs of action to either party in an ERISA action.

21.    As a result of the actions and failings of the Defendants, Plaintiff has retained the services of legal counsel and has necessarily incurred attorney's fees and costs in prosecuting this action. Further, Plaintiff anticipates incurring additional attorney's fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown. Plaintiff therefore requests an award of reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For a declaration regarding the Defendants' noncompliance with minimum requirements of ERISA and other federal and state laws in connection with the reduced benefits;

B.    For benefits payable under the Plan to reimburse Plaintiff for payments that Plaintiff has been entitled to receive;

C.    For future benefits payable under the Plan Plaintiff is entitled to receive;

D    For an award of prejudgment interest;

E.    For an award of reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g)(1);

F.    For costs incurred; and

G.    For such other and further relief as the Court deems appropriate.

COOCH AND TAYLOR, P.A.

Eric M. Andersen (No. 4376)
H. Alfred Tarrant, Jr. (No. 445)
824 N. Market Street, Ste. 1000
Wilmington, DE  19801
302-652-3641
*Attorneys for Barbara R. Johnson*

DATED:  October 29, 2007

# EXHIBIT "A"

## AMENDED AND RESTATED

## UNFUNDED DEFERRED COMPENSATION AGREEMENT

This Amended and Restated Unfunded Deferred Compensation Agreement is made this _30th_ day of November, 1993, by and between NANTICOKE HEALTH SERVICES, INC., a not for profit corporation organized under the laws of the State of Delaware (hereinafter the "Employer"), and EDWARD H. HANCOCK (hereinafter the "Employee").

The Background of this Agreement is as follows:

A.    In 1986, the Employee was employed by Nanticoke Memorial Hospital, Inc., a not for profit corporation organized under the laws of the State of Delaware (the "Hospital"). Prior to August 16, 1986, the Hospital provided the Employee with deferred compensation equal to 20 percent of the Employee's base salary pursuant to a written plan (the "Plan").

B.    When the Hospital was subsequently reorganized, the Hospital became a wholly-owned subsidiary of the Employer, Employee transferred his employment to the Employer and the Employer assumed the Hospital's obligations to Employee under the Plan.

C.    The Plan is grandfathered pursuant to the Tax Reform Act of 1986, Section 1107(c)(3)(B) and IRS Notice 87-13, 1987-1 Cum. Bul. 432, Q&A 28.

D.    This Agreement is to amend and restate the Plan without either altering the fixed percentage of deferred

1

compensation provided to Employee, or disturbing the grandfathered status of the Plan under the Tax Reform Act of 1986.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. As an inducement to Employee to remain in his employment as the President of the Employer, in addition to the other compensation payable to the Employee, the Employer agrees to provide Employee with deferred compensation which will become payable upon the sooner of July 1, 2006, or Employee's termination of employment.

2. Each June 30 (or the date of termination of employment in the year of Employee's termination of employment), the Employer shall credit to a book reserve (the "Deferred Compensation Account") established for this purpose, 20 percent of Employee's base compensation for the calendar year (or portion of the year in the year of Employee's termination of employment). Such Deferred Compensation Account shall also be credited with earnings which would have been realized had the Deferred Compensation Account been invested and reinvested prior to July 1, 1994, in the same investments as the general funds of Nanticoke Memorial Hospital, and after June 30, 1994, in equal shares in each of the four following mutual funds: (1) Fidelity Contrafund, (2) Fidelity Growth & Income Fund,

2

(3) Fidelity Asset Manager and (4) Fidelity Utilities Income Fund.

     The Employee agrees on behalf of himself and his designated beneficiaries to assume all risk in connection with the investment return on his Deferred Compensation Account. Title to and beneficial ownership of any assets, whether cash or investments, which the Employer may earmark to pay deferred compensation hereunder, shall at all times remain in the Employer, and the Employee and his designated beneficiaries shall not have any property interest whatsoever in any specific assets of the Employer.

     3.   The vested percentage of the balance credited to the Deferred Compensation Account shall be paid to the Employee (or his beneficiaries in the event of his death) over fifteen (15) years in sixty (60) quarterly payments, on the July 1, October 1, January 1, and April 1, following the Employee's termination of employment. His vested balance in the Deferred Compensation Agreement shall be computed based upon his date of termination of employment as follows:

| Date of Termination of Employment | Vested Percentage |
|---|---|
| Date of this Agreement through 6/30/94 | 80 percent |
| 7/1/94 through 6/30/95 | 90 percent |
| After 6/30/95 | 100 percent |

     4.   The beneficiaries of Employee who shall be entitled to any portion of his Deferred Compensation Account

3

not paid to the Employee prior to the Employee's death shall be his spouse if he is married at his death, or if he is not married at his death then his beneficiaries shall be his issue, per stirpes.  In the event that due to the deaths of Employee, his spouse and issue, any portion of the Deferred Compensation Account is not paid, the remainder of said Account shall be paid to the Hospital.

5.    Nothing contained in this Agreement and no action taken pursuant to the provisions of this Agreement, shall create or be construed to create a trust of any kind, or a fiduciary relationship among the Employer and the Employee, his designated beneficiaries or any other person. Nothing contained in this Agreement and no action taken pursuant to the provisions of this Agreement shall create or be construed to entitle Employee, his beneficiaries or any other person to any asset which the Employer now owns or may acquire with the object of funding its obligations hereunder. Any such assets of the Employer shall continue for all purposes to be a part of the general funds of the Employer, and no person shall on account of this Agreement acquire any right to receive payments from the Employer under this Agreement greater than the right of any other unsecured general creditor of the Employer.

6.    The right of the Employee or any other person to any payment hereunder may not be assigned, transferred, pledged, or encumbered by Employee or any other person, and

4

any such attempted assignment, transfer, pledge or encumbrance shall be null and void.

      7.   If the Board of Directors of the Employer (or any committee to which the Board of Directors delegates this responsibility) shall find that any person to whom any payment is payable under this Agreement is unable to care for his affairs because of illness or accident, or is a minor, any payment due (unless a prior claim therefor shall have been made by a duly appointed guardian, committee or other legal representative) may be paid to the spouse, a child, a parent, or a brother or sister, a person designated under the applicable Uniform Gifts to Minors Act, or to any person deemed by the Board of Directors of the Employer to have incurred expense for such person otherwise entitled to payment, in such manner and proportions as the Board of Directors of the Employer may determine.  Any such payment shall be a complete discharge of the liabilities of the Employer under this Agreement.

      8.   Any deferred compensation payable under this Agreement shall not be deemed salary or other compensation to the Employee for the purpose of computing benefits to which he may be entitled under any pension plan or other arrangement of the Employer for the benefit of its employees.

      9.   The Board of Directors of the Employer (or any committee to which the Board of Directors delegates this responsibility) shall have full power and authority to interpret, construe and administer this Agreement and the

5

Board's interpretations and construction thereof and actions thereunder shall be binding and conclusive on all persons for all purposes. No member of the Board of Directors of the Employer shall be liable to any person for any action taken or omitted in connection with the interpretation and administration of this Agreement, unless attributable to his own willful misconduct or lack of good faith.

10. This Agreement shall be binding upon and inure to the benefit of the Employer, its successors and assigns and the Employee and his heirs, executor, administrators and legal representatives.

11. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware.

IN WITNESS WHEREOF, the Employer has caused this Agreement to be executed by its duly authorized officers and the Employee has hereunto set his hand and seal as of the date first above written.

Attest:                                    NANTICOKE HEALTH SERVICES, INC.

By:                                        By:
    Secretary of Board                         Chairman of Board

(Corporate Seal)


Witness                                    EDWARD H. HANCOCK

6

**EXHIBIT "B"**

IN THE FAMILY COURT OF THE STATE OF DELAWARE

IN AND FOR SUSSEX COUNTY

IN RE THE MARRIAGE OF:                    )
                                          )
EDWARD H. HANCOCK,                        )     File No. CS02-04219
                                          )     Case No. 02-24646
        Petitioner,                       )
                                          )
        v.                                )
                                          )
BARBARA R. HANCOCK,                       )
                                          )
        Respondent.                       )

## STIPULATION AND ORDER

IT IS STIPULATED by and between the parties and their respective counsel of record as follows:

1.      Each party shall hereafter be the sole owner of his or her own clothing, jewelry and personal effects.

2.      The marital  household furnishings shall be divided amicably or, should the parties not be able to agree, pursuant to the two list method.

3.      Husband shall hereafter be the sole owner of the El Camino, the boat, and the two trailers which relate thereto.  Husband shall be credited for property division purposes with a total value of $5,000 for these items.

4.      As to motor vehicles:

        (a)     Wife shall hereafter be the sole owner of the 1999 Pontiac Montana and the 1989 Honda Accord.

COOCH AND TAYLOR

Rec'd: _____ 8-21-03  BKB
To Client: ___ 8/26/03 ___
Response Deadline: _____
Abacus Entry: _____

(b)     Husband shall hereafter be the sole owner of the 2002 Silverado and the 1996 Jeep. He shall also be solely responsible for the GMAC debt on the Silverado and shall indemnify and hold Wife harmless with respect thereto.

(c)     All vehicles shall for property division purposes be valued at the NADA retail rate as reflected by the July, 2003 edition. The GMAC debt on the Silverado shall be valued as of June 30, 2003.

5.     The parties jointly own a residence at 20 Barley Run, Seaford, Delaware, and a residence at 1353 Island Point Road, Heathsville, Virginia. With respect to these properties:

(a)     Wife shall hereafter be the sole owner of the Seaford property which shall be valued for division purposes at $233,500 and has a mortgage with a balance of approximately $165,408. She shall also be solely responsible for that mortgage and shall indemnify and hold Husband harmless with respect thereto.

(b)     Husband shall hereafter be the sole owner of the Virginia property, which shall be valued for division purposes at $415,000 and has a mortgage with a balance of approximately $271,321. He shall also be solely responsible for that mortgage and shall indemnify and hold Wife harmless with respect thereto.

(c)     For property division purposes the principal balance of each mortgage as of June 30, 2003 shall be utilized.

(d)     Each party shall as soon as practicable execute and deliver to the other party a deed conveying to the other all his or her right, title and interest in and to the property awarded to the other party in this paragraph 5.

2

(e)    Each party shall as soon as practicable, by refinancing or otherwise, arrange to have the other party released from liability on the mortgage covering the property he or she is retaining per subparagraphs (a) or (b) supra.

6.    Expressly excluding the retirement plans dealt with in paragraph 7 infra, the net marital estate, including, but not limited to, the personal property described in paragraphs 3 and 4 supra, the real estate described in paragraph 5 supra, stocks, bonds, certificates of deposit, savings, checking and other banking-type accounts, shall be divided 55%/45% in Wife's favor. The stocks, bonds and bank-account type holdings shall, for the purpose of this division, be valued as of the close of business on June 30, 2003, plus interest on the bank holdings to the date of division. The division of the stocks, bonds and bank account-type holdings shall be carried out as follows:

(a)    Wife shall hereafter own all three Wilmington Trust CDs plus sufficient of the Wilmington Trust money market account to achieve a 55/45 division in her favor of all the non-retirement assets except the investment accounts.

(b)    Each of the investment accounts, as well as individual stocks, shall be divided 55/45 in Wife's favor on an in-kind basis so as to allocate the tax consequences of the various investments equally between the parties. It is the intention of the parties that these investments be divided tax free, pursuant to IRC Section 1041. These accounts shall be divided immediately upon the signing of this Stipulation.

(c)    A pro forma balance sheet illustrating the intended approach to division is attached hereto as Exhibit "A".

7.    As to pension/retirement plans:

3

(a)     Husband waives and releases with prejudice any claim to Wife's State of Delaware pension.

(b)     Each party has an IRA. As soon as practicable Wife shall receive from Husband's IRA, by Qualified Domestic Relations Order if necessary, sufficient money so that she will have 60% of the total of their IRAs, valued for this purpose as of June 30, 2003.

(c)     Husband has three qualified retirement plans through Nanticoke Health Services. These are the Nanticoke Memorial Hospital Retirement Plus Plan, the Nanticoke Memorial Hospital Cash Balance Plan and the Retirement Plan for Employees of Nanticoke Hospital. The latter two plans are defined benefit plans and the former is a defined contribution plan. As to these plans:

(i)     The two defined benefit plans shall be distributed to Wife pursuant to the Cooper formula by a Qualified Domestic Relations Order with a 50% multiplier. Wife shall receive her share for her life and her share shall also include her proportional share of cost of living adjustments, pre-retirement survivorship benefits and subsidized early retirement benefits.

(ii)     Wife shall receive 50% of the defined contribution plan, valued as of December 31, 2002, together with gains, losses or accrued income thereon between the date of valuation and the date of distribution. This also shall be accomplished by Qualified Domestic Relations Order.

(iii)     The plan administrator for all three plans is the Nanticoke Memorial Hospital. Husband will assist in the filing of the Qualified Domestic Relations Order or Orders with the plan administrator in order to assure that payment options are approved prior to Husband's retirement.

(iv)     Price Waterhouse Cooper's estimation of monthly benefit on the retirement plan for employees of Nanticoke Hospital, as of January 2003, on a 100% joint and survivor basis, was $1,100.

(d)     Husband is also a participant in two non-qualified retirement plans through Nanticoke Health Services. These are the Amended and Restated Unfunded Deferred Compensation Agreement dated November 30, 1993, and the Nanticoke Memorial Health Services Supplemental Executive Retirement Plan (SERP) dated July 1, 1997. It is the intention of the parties that Wife shall be entitled to receive her portion of the non-qualified plans just as if she had received her share by Qualified Domestic Relations Order. Wife acknowledges Husband will be responsible for the payment of taxes on the distribution. Wife's distribution shall be net of the actual taxes paid by Husband. Husband warrants that he will cooperate with Wife in giving his consent to such distribution, provide supporting documentation regarding taxes, and execute all necessary forms to carry out the intent of this paragraph. With respect to the deferred compensation plan, there are options for distribution that each party will make at the date of Husband's retirement. By way of example, if Wife elects a lump sum distribution rather than an annuity payment, Wife will reimburse Husband for taxes due as a result of any distribution made to Wife. If an annuity option is elected, Wife's payment will be reduced by federal and state income taxes. Husband will provide Wife with supporting documentation on taxes due as a result of any distributions to her. Nanticoke Memorial Hospital, under current tax guidelines, has established account no. 108367JJ000 at Mellon Private Asset Management, which is associated with the deferred compensation plan. This account may not be divided. It is the objective of the parties that Wife and Husband will divide the account 50/50 based on the value of the account as of December 31, 2002. Wife's share of the account will be

designated as (B) and Husband's share will be designated as (E). Wife will have the authority to make investment decisions prior to Husband's retirement. Wife's allocated share of this account will be adjusted for gains and losses from December 31, 2002. Wife shall remain the beneficiary of this plan until Husband's retirement and until she has received her share of the plan.

The SERP retirement plan provides for a lump sum distribution one year following Husband's retirement. Wife will receive her share of this non-qualified plan pursuant to the Cooper formula with a 50% multiplier. Price Waterhouse Cooper estimated the lump sum payment as of June 30, 2003 to be $944,176. Wife recognizes this lump sum value is based on assumptions regarding the TSA Plan balance and the Social Security offset. Wife will receive prompt notification by Husband if there are any changes to the provisions of this plan. Wife further recognizes that the SERP benefits are payable from the general assets of Nanticoke Memorial Hospital. Wife will remain the primary beneficiary of the plan until receipt of her share of the distribution. Husband will provide Wife with a copy of the current beneficiary designation on file with the plan administrator/committee.

(e)     Husband also has a GE annuity (contract no. 001978904, issued 5/15/84) said to be valued at $46,893 as of January 1, 2002. Wife and her advisors have been provided with inadequate information to determine the precise nature of this asset. Therefore:

(i)     If it is in fact a non-qualified retirement plan, then Wife shall receive, if possible under the plan, a share in the same manner (except for the year waiting period after Husband's retirement) as she is to receive a share of Husband's SERP plan pursuant to subparagraph (d) supra. If the plan is not divisible, then Husband shall pay Wife a Cooper formula share (using

a 50% multiplier) of the value as of December 31, 2002, net of any taxes paid by Husband when he receives distribution.

        (ii)     If it is in fact not a retirement plan but it is divisible, then Wife shall receive 55% of it valued for this purpose as of December 31, 2002. If it is in fact not a retirement plan <u>and</u> is non-divisible, then Husband shall pay Wife 50% of the amount distributed to him, net of any taxes paid by him as a result of the distribution.

        (f)     A copy of the Price Waterhouse Cooper's letter of June 30, 2003 confirming some of the estimates described in subparagraphs (c) and (d) <u>supra</u> is attached hereto as Exhibit "B".

        (g)     The parties shall cooperate in causing the issuance of such Qualified Domestic Relations Orders or other documents as shall be necessary to implement the provisions of this paragraph 7.

        8.     Beginning on or before August 1, 2003, and continuing until modified or terminated as provided below, Husband shall pay to Wife alimony in the amount of $2,500 per month. Such amount:

        (a)     Shall be reduced to $2,250 per month as of August 1, 2004.

        (b)     Shall terminate upon the death of either party or Wife's remarriage or cohabitation [as defined in 13 <u>Del</u>. <u>C</u>. § 1512(g)], whichever shall first occur.

        (c)     Shall be subject to modification upon a real and substantial change in circumstances as defined by 13 <u>Del</u>. <u>C</u>. § 1519(a)(4). The parties expressly agree that Husband's retirement from gainful employment, now anticipated to take place in November of 2004, shall be a sufficient change in circumstances to permit Husband to seek modification.

(d)    It is understood and intended by the parties to be, for income tax purposes, taxable income to Wife and fully deductible by Husband.

(e)    The mortgage on the Seaford residence is currently automatically withdrawn from Husband's bank account. So long as such automatic withdrawals continue, Husband shall be entitled to a credit against his alimony obligation in the amount of such mortgage payment. He shall, however, as promptly as possible, take all steps necessary to end such automatic withdrawals.

9.    Husband shall designate Wife as first beneficiary of insurance coverage on his life providing a death benefit of at least $200,000. As to this requirement:

(a)    It shall end once Husband has retired from gainful employment and Wife has (i) received total control over her own, designated sub-account in Husband's deferred compensation plan (as provided by paragraph 7(d) supra) and (ii) she is in pay status as to her share of the qualified plans.

(b)    While Husband's obligation under this paragraph remains in force, he shall, upon Wife's request but not more often than semi-annually, provide her with documentary evidence that the required coverage remains in effect and that she remains the first beneficiary thereof.

(c)    If Husband should die while his obligation under this paragraph 9 remains in force and Wife shall fail to receive the full amount of the insurance coverage due her, then she shall, in addition to any other available legal remedies, have a secured creditor's claim against Husband's estate for the amount of any shortfall.

10.    Each party represents that he or she has fully and fairly disclosed all significant marital assets and liabilities and understands that the other party has relied upon the accuracy of those representations in agreeing to this settlement. If it should ever be determined that such

8

representations were inaccurate, then the aggrieved party shall have the right to reopen the issues dealt with in this stipulation.

11.     Each party shall hereafter be the sole owner of all other assets not expressly dealt with in this Stipulation, now titled in his or her individual name or, if not formally titled, in his or her possession.

12.     Each party shall hereafter be solely responsible for timely payment of all debts, not expressly dealt with in this Stipulation, incurred by him or her individually.

13.     Except as otherwise expressly provided herein, each party waives and releases with prejudice all claims against the other which were or could have been asserted in these proceedings, including, but not limited to, claims for property division pursuant to 13 Del. C. §1513, for alimony or support or modification thereof pursuant to 13 Del. C. §1509, §1512 or §502, or for legal expenses pursuant to 13 Del. C. §1509 or §1515.

14.     Each party shall execute and deliver to the other all documents which are reasonably necessary to carry into effect the provisions of this Stipulation. The parties expressly agree that the provisions of 13 Del.C. §1513(f) shall be applicable.

15.     Each party shall pay his or her own legal expenses incident to their separation, divorce and the negotiation and execution of this agreement.

16.    In the event either party breaches any provision of this Stipulation, he or she shall be required to pay the other party's reasonable legal expenses, including attorney's fees, for prosecuting such breach.

SCHMITTINGER & RODRIGUEZ

_____
EDWARD H. HANCOCK
Petitioner

_____
CRAIG T. ELIASSEN
414 S. State Street
P.O. Box 497
Dover, DE 19903
(302) 674-0140
Attorney for Petitioner

COOCH AND TAYLOR

_____
Barbara R. Johnson,
formerly Barbara R. Hancock,
Respondent

_____
H. ALFRED TARRANT, JR.
P.O. Box 1680
Wilmington, DE 19899-1680
(302) 652-3641
Attorney for Respondent

SO ORDERED this 18th day of August, 2003.

_____
JUDGE PETER B. JONES

Date Mailed:  August 19, 2003

HAT/mc; 7/15/03; 7/31/03; 8/4/03; 8/8/03; FL02/104; (21632-1)
O:\Attorneys\HAT\Legal Docs\Hancock - S&O.wpd

10

Exhibit "A"

## PRO FORMA BALANCE SHEET

n-Retirement Assets/Liabilities Only)[1]

| | Value | Husband | Wife |
|---|---|---|---|
| | $5,000.00 | $5,000.00 | |
| | $233,500.00 | | $233,500.00 |
| | $415,000.00 | $415,000.00 | |
| | $25,275.00 | $25,275.00 | |
| | $9,225.00 | $9,225.00 | |
| | $11,000.00 | | $11,000.00 |
| | $2,600.00 | | $2,600.00 |

Each account or stock to be divided 55/45 in Wife's favor, in kind.

| | Value | Husband | Wife |
|---|---|---|---|
| | $30,000.00 | | $30,000.00 |
| | $72,310.00 | | $72,310.00 |
| | $43,731.00 | | $43,731.00 |
| | $ 31,875.00 | $ 24,875.00 | $ 7,000.00 |
| | **$880,516.00** | **$480,375.00** | **$400,141.00** |

ecise nature of which is unclear, will, if it is not a retirement plan, be
h 7(e)(ii) of the Stipulation.

n some cases estimates and for illustrative

Exhibit "B"

Aug. 1. 2003 11:32AM                                                No.8168    P. 2

# PRICEWATERHOUSE COOPERS 🅡

June 30, 2003

PricewaterhouseCoopers LLP
Two Commerce Square, Suite 1700
2001 Market Street
Philadelphia  PA 19103-7042
Telephone (267) 330 3000
Facsimile (267) 330 3300

**Private & Confidential**

Ms. Devon Daniels
Daniels & Tansey
Two Mill Road
Suite 102
Wilmington, DE  19806

Re:    <u>Edward H. Hancock (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)</u>

Dear Devon:

As requested, we have **estimated** the early retirement benefits payable to Mr. Edward Hancock from the Retirement Plan for Employees of Nanticoke Memorial Hospital (the "Retirement Plan") and the Nanticoke Memorial Health Services Supplemental Executive Retirement Plan (SERP), based on a termination date of December 31, 2002.

These estimates were based on the following information:

| | |
|---|---|
| Date of Birth: | July 14, 1944 |
| Date of Hire: | November 5, 1979 |
| Spouse's Date of Birth: | June 20, 1949 |
| Final Annual Salary: | $184,551 |
| Service as of December 31, 2002: | 23.5833 |
| Estimated Retirement Plan Account Balance as of December 31, 2002: | $197,552 |

## Retirement Plan for Employees of Nanticoke Memorial Hospital

Based on the $197,552 Account Balance and the provisions of this plan, we have estimated the following monthly benefit options commencing on January 1, 2002 that are payable from the Retirement Plan:

| | Estimated Monthly Benefit Starting January 1, 2003 |
|---|---|
| Single Life Annuity | $1,281 |
| 50% Joint & Survivor Annuity | $1,186 |
| 100% Joint & Survivor Annuity | $1,104 |
| 10 Year Certain & Life Annuity | $1,238 |



## Supplemental Executive Retirement Plan (SERP)

We have also estimated the lump sum benefit for Mr. Hancock under the SERP. Based on the above information, the provisions of the plan and on additional assumptions regarding his employer-provided TSA balance and his social security offset, we have estimated his lump sum benefit to be $944,176 with a distribution date of January 1, 2003. The details of this calculation are presented on the enclosed exhibit. Note that this SERP benefit is payable from the general assets of Nanticoke only.

* * * * * * *

Please note that these benefits are estimates only. Mr. Hancock's actual benefits will be based on his actual account balances at termination and the provisions of the plan in effect at that time. In addition, benefits under the SERP are distributed in a lump sum form of payment, one year following termination of employment, provided the "not-to-compete" requirements are satisfied.

Please do not hesitate to call with any questions.

Sincerely,

*Robert W Bruechert*

Robert W. Bruechert
Partner

RWB/dao
Enclosure

cc:     Justin Lofurno – Nanticoke Memorial Hospital (w/encl.)

G:\TLS\H(#)RET\nant\DB\CERTS\SERP\Hancock 123102.doc

Nanticoke Health Services
Supplemental Executive Retirement Plan
(SERP)

Benefit Calculation Worksheet for:
Edward Hancock

|  |  |  |
|---|---|---|
| Birth Date |  | 7/14/1944 |
| Benefit Determination Date |  | 12/31/2002 |
| 1 | Final Compensation | $184,551.20 |
| 2 | Proration for other than 20 years of service |  |
|  | a  Total Service at Retirement | 23.5833 |
|  | b  20 Years | 20 |
|  | c  Proration Factor = (a) / (b) | 1.1792 |
| 3 | Target Percentage = (2)(c) x 46% | 54.24320% |
| 4 | Target Benefit = (1) x (3) | $100,106.48 |
| 5 | Early Retirement Reduction Factor | 82.0833% |
| 6 | Total Benefit at Early Retirement Date = (4) x (5) | $82,170.70 |
| 7 | Reduction of Target Benefit for Benefits Payable From: |  |
|  | a  NHS Retirement Plan [1] | $15,374.85 |
|  | b  Social Security Benefit [2] | $10,160.99 |
|  | c  Employer provided TSA [3]  *(decrease on $1 in c)* | $1,770.47 |
|  | d  Total | $27,306.31 |
| 8 | Net benefit provided by SERP = (6) − (7)(d) | $54,864.39 |
| 9 | Net benefit gross-up to cover additional tax liability<br>= (8) x 1.3589<br>= Annual annuity at retirement | $74,555.22 |
| 10 | Estimated Lump Sum Amount [4] | $944,175.95 |

[1] Based on estimated balance of $197,552 on 12/31/2002.

[2] Based on 2002 law.

[3] Based on estimated balance of $19,889 on 12/31/2002.

[4] Based on GAM83 Unisex Mortality Tables with an interest rate of 5.65%.

EXHIBIT "C"

e

ɾ **National Tax**    ɾ Internal Correspondence

1225 Connecticut Avenue, N.W.
Washington, D.C. 20036

**Tax Advisor/Client Communication**
**Privileged And Confidential**

October 13, 2006

To:    Nanticoke Health Services, Inc. Tax Files

From:  Ira Mirsky

## Issues Related to Supplemental Retirement Arrangement and Retiree Medical Benefits Provided to Mr. Edward Hancock

The purpose of this memorandum is to provide an executive summary of issues related to both the supplemental retirement arrangement and retiree medical benefits provided to Mr. Edward Hancock in connection with the termination of his employment with Nanticoke Health Services, Inc.

<u>Facts</u>

Nanticoke Health Services, Inc. (Nanticoke) is a tax-exempt organization which operates Nanticoke Memorial Hospital, and affiliated medical centers and outpatient services in Sussex County Delaware.

Nanticoke maintains a supplemental executive retirement plan (SERP) which provides a supplemental retirement benefit, in addition to the Nanticoke's tax-qualified retirement arrangements, to its former CEO and President – Mr. Edward Hancock. Mr. Hancock terminated his employment with Nanticoke in November of 2004, and the first of 60 quarterly installment payments from the SERP commenced on January 3, 2005. Mr. Hancock is divorced, and a portion of his SERP benefits are distributed directly to his former spouse (Barbara Johnson).

The SERP is a nonqualified deferred compensation (NQDC) arrangement which has been assumed by Nanticoke, in essentially the same form first established by an agreement between Mr. Hancock and the predecessor entity, Nanticoke Memorial Hospital, Inc., prior to August 16, 1986, following Nanticoke's 1993 reorganization.

Under the terms of the SERP, each year Nanticoke credited Mr. Hancock's SERP account with an amount equal to 20% of his annual base compensation. Mr. Hancock's account balance was equally invested in four Fidelity mutual funds identified in the SERP plan

document. Mr. Hancock became entitled to his SERP account balance pursuant to the following vesting schedule:

- 80% vested upon continued employment through June 30, 1994;
- 90% vested upon continued employment through June 30, 1995;
- 100% vested upon continued employment *after* June 30, 1995;

Each year after 1995, Nanticoke continued to make fully vested contributions for Mr. Hancock's benefit under the SERP.

It is our understanding that no portion of Mr. Hancock's SERP benefit was taken into account as "wages", for FICA tax purposes, at the time of vesting. It is also our understanding that no tax information reporting or withholding was performed in connection with 2005 and 2006 SERP benefits distributions, both to Mr. Hancock and his former spouse.

Pursuant to Nanticoke's Separation Agreement with Mr. Hancock, he has also received a continuation of medical coverage for Mr. Hancock and his current spouse (Beth Hancock) until Mr. Hancock's 65th birthday. – It is our understanding that this benefit has not been taken into account as taxable compensation.

Nanticoke has retained Ernst & Young in order to advise on the correction of these and other outstanding 2005 and 2006 employment tax information reporting and withholding issues in connection with cash payments and other taxable benefits provided to Mr. Hancock pursuant to the terms of his Separation Agreement.

Issues

(1) What is the required tax treatment for the benefits provided under the SERP arrangement with Mr. Hancock? And what is Nanticoke's liability for any failure to report and withhold on these NQDC benefits for employment tax purposes?

(2) What is the required tax treatment for SERP benefits payments to Mr. Hancock's former spouse? And what is Nanticoke's liability for any failure to report and withhold on these SERP benefits to Mr. Hancock's former spouse?

(3) What is the FICA tax implication of Nanticoke's failure to take Mr. Hancock's SERP benefits into account as "wages," for FICA tax purposes, for each of the years of contribution/vesting?

(4) What alternatives (if any) are available for Nanticoke to avoid the unanticipated additional cost, both the Mr. Hancock and the Hospital, of the 6.2% Social Security tax on his SERP benefits?

Nanticoke Health Services, Inc. Tax Files

(5) What is the required tax treatment of the continued medical coverage for Mr. Hancock and his current spouse? And what is Nanticoke's liability for the failure to take these benefits into account as additional taxable compensation for employment tax purposes?

## Conclusions

(1) The NQDC arrangement with Mr. Hancock was established prior to August 16, 1986, and is "grandfathered" from taxation under IRC §457(f). Thus, the benefits provided under NQDC arrangement with Mr. Hancock will be subject to Federal income tax withholding (FITW), and Delaware state income tax withholding as the benefits are paid out. As discussed below, the benefits will also be subject to FICA taxation as the benefits are paid out pursuant to the NQDC rules under IRC §3121(v)(2) and the Regulations. These amounts constitute wages, and are subject to reporting on IRS Form W-2 for the year of payment.

Nanticoke is required to correct for its employment tax information reporting and withholding obligation in connection with the SERP distributions during 2005 and earlier periods in 2006, and could potentially mitigate its potential exposure for penalties and interest by voluntarily correcting these reporting and withholding errors. Pursuant to IRC §§3102(a) and 3402(a), Nanticoke has a joint and several liability for withholding the employee's share of FICA taxes and FITW, respectively. Nanticoke could also potentially be subject to accuracy-related penalties, and interest, in connection with its failure to properly report and withhold employment taxes on the payment of wages.

(2) The SERP benefits payments to Mr. Hancock's former spouse are subject to split reporting/taxation. For income tax purposes, the amounts are reported to the former spouse on Form 1099-MISC, Box 3 ("Other income"), with income taxes withheld and deposited as "non-wage withholding" with the IRS, and applicable State tax authorities (Delaware). However, for FICA tax purposes, the amounts are included as Social Security and Medicare wages (Boxes 3 and 5, respectively) on Mr. Hancock's Form W-2. FICA taxes are also withheld from the former spouse's distribution.[1]

As discussed at "(1)" above, Nanticoke is required to correct for its employment tax information reporting and withholding obligations. Further, Nanticoke faces substantial potential exposure for failing to correct these errors.

(3) The FICA tax implication of Nanticoke failing to take these SERP benefits into account as "wages," for FICA tax purposes, in each of the years of contribution/vesting is that Mr. Hancock will incur a liability for the 6.2% Social Security component of the FICA tax on his benefits for each of the next 13 years. Similarly, Nanticoke will have a corresponding liability for the employer's share of Social Security taxes.

---

[1] Rev. Rul. 2002-22 provides a limited exception to this general rule, described below.

Nanticoke Health Services, Inc. Tax Files

Mr. Hancock was maxed-out on the Social Security wage base for each of the years in which his SERP benefits were contributed/vested and, therefore, he would only have been subjected to the 1.45% Medicare component of FICA taxes on his SERP benefits if they had been taken into account as "wages," for FICA tax purposes, at that time. Similarly, Nanticoke would only have been subjected to the employer's share of Medicare taxes on Mr. Hancock's SERP benefits.

The current SERP distribution scheme provides that Mr. Hancock will receive quarterly distributions through October 1, 2019. Thus, both Mr. Hancock and Nanticoke will incur an unanticipated liability for Social Security tax on his benefits for each of the next 13 years.

(4) One practical alternative to avoid the unanticipated additional cost of the 6.2% Social Security tax on Mr. Hancock's SERP benefits would be to terminate the SERP, and distribute all benefits to Mr. Hancock and his former spouse *immediately*. This would avoid the application of Social Security taxes, in excess of the annual wage base limitation, for each of the next 13 years' payments under the current distribution scheme. However, the immediacy for the distribution of Mr. Hancock's SERP benefits must be tempered against the provisions of the new nonqualified deferred compensation rules under IRC Section 409A.

Mr. Hancock's SERP arrangement was established and vested prior to October 3, 2004 and thus, is generally grandfathered from the application of IRC §409A. However, any modification to Mr. Hancock's SERP, including the cancellation thereof, would subject the SERP to the rules of IRC §409A. The Proposed Treasury Regulations under IRC §409A provide that a modification to a deferred compensation arrangement cannot result in a distribution of cash or vested property during the calendar year 2006. Thus, in order to avoid the application IRC §409A, and the assessment of an additional 20% penalty tax against Mr. Hancock personally, the cancellation of Mr. Hancock's SERP cannot result in the distribution of his vested SERP benefits *until January 2007 or later.*[2]

(5) Unless the medical coverage is provided via a private insurance policy, rather than under Nanticoke's self-insured health insurance arrangement, these medical benefits are taxable as additional compensation to Mr. Hancock. In addition, the commitment to provide taxable health insurance benefits over an extended period could potentially be construed as an NQDC arrangement subject to taxation under IRC §457(f).

The taxable medical coverage will not be subject to the NQDC rules under IRC §409A, because the Separation Agreement was executed on October 18, 2004. Amounts deferred prior to January 1, 2005 are grandfathered under IRC §409A.

---

[2] *See,* Preamble to Prop. Reg. 1.409A-1, Section XI, C, "Change in payment elections or conditions on or before December 31, 2006."

07-685

℗JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Barbara R. Johnson

**DEFENDANTS**

Nanticoke Health Services, Inc and Nanticoke Memorial Hospital

2007 OCT 30 PM 3: 37
FILED U.S. DISTRICT COURT
DISTRICT OF DELAWARE
CLERK, U.S. DISTRICT COURT

**(b)** County of Residence of First Listed Plaintiff **Sussex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Cooch and Taylor, P.A., 824 Market St. Suite 1000, Wilm. DE 19801 (302) 984-3856

Attorneys (If Known)

**II. BASIS OF JURISDICTION**   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☒ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. § 1337

Brief description of cause:
Recovery of Plan Benefits

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):
JUDGE _____     DOCKET NUMBER _____

DATE
Oct. 29, 2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____ 0 7 - 6 8 5 _____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF _____ 2 _____ COPIES OF AO FORM 85.

_____10-30-07_____          _____
(Date forms issued)                (Signature of Party or their Representative)

          Tracee Hunt
          (Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action