AO88 (DE Rev. 01/07) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

| Barbara R. Johnson | SUBPOENA IN A CIVIL CASE |
|---|---|
| V. | |
| Nanticoke Health Services, Inc., et al. | Case Number:[1] 07-685-SLR |

TO: Ernst & Young, LLP
c/o National Registered Agents, Inc.
160 Greentree Drive, Suite 101
Dover, DE 19904

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
**See attached Exhibit A.

| PLACE  Cooch and Taylor, P.A., 824 N. Market Street, Suite 1000, Wilmington, DE 19801 | DATE AND TIME  3/11/2008 12:00 pm |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  2/11/08 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Eric M. Andersen, Esquire, Cooch and Taylor, P.A., 824 N. Market Street, Suite 1000, Wilmington, DE 19801
(302) 984-3856

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | 2/11/08 | C/O NATIONAL REGISTERED AGENTS<br>160 GREENTREE DR<br>DOVER, DE |

| SERVED ON (Print Name) | MANNER OF SERVICE |
|---|---|
| ERNST & YOUNG, LLP | ACCEPTED BY<br>DEB SEALUND |

| SERVED BY (Print Name) | TITLE |
|---|---|
| GRANVILLE MORRIS | Private Process Server |

# DECLARATION OF SERVER

I declare under penalty of perjury under the law of the State of Delaware that the foregoing information contained in the Proof of Service is true and correct.

Executed on:    2/11/08

SIGNATURE OF SERVER
BRANDYWINE PROCESS SERVERS, LTD.
P. 0. BOX 1360
WILMINGTON, DE 19899-1360
(302) 475 - 2600

---

Superior Court Civil Rule 45, Parts C, D & E*

*(c) Protection of Persons subject to Subpoenas*

(1)   A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing under burden or expense on a person subject to that subpoena. The Curt shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
   (B) Subject to paragraph (d)(2) of this rule a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the Court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

   (3)(A) On timely motion, the Court shall quash or modify the subpoena if it
      (i) fails to allow reasonable time for compliance,
      (ii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
      (iii) subjects a person to undue burden.

   (B) If a subpoena
      (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
      (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party,

the Court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the Court may order appearance or production only upon specified conditions.

(d) *Duties in Responding to Subpoena.*

   (1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
   (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(e) *Contempt.*

   Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed contempt of court.

# EXHIBIT "A"

## DEFINITIONS

1. "Communication" means any exchange or transmission of information by any means, including but not limited to written, verbal, and/or electronic exchanges and/or transmissions.

2. "Concern" or "Concerning" means mentioning, describing, pertaining to, referring to, relating to, created in connection with or as a result of, commenting on, embodying, evaluating, analyzing, reflecting, and/or constituting, whether directly or indirectly, explicitly or implicitly, or in whole or in part, a stated subject matter.

3. "Document" means the original and any non-identical copy (which is different from the original or any copy because of notations thereon or attached thereto or otherwise) of any electronic, written, recorded, printed, typewritten, or handwritten matter, however produced, reproduced, stored, and/or recorded, including any translations thereof, and including, without limitation, electronically stored information (including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained), letters, telegrams, memoranda, reports, studies, diaries, minutes, maps, pamphlets, notes, charts, calendars, tabulations, analyses, bank records, income tax records, statistical information, accumulations, meeting records, communications of any kind, film impressions, videotapes, photographs, magnetic tape, sound or mechanical reproductions, recordings, contracts, invoices, advertisements, receipts, drawings, vouchers, e-mails, computer files, backup tapes, compact discs, floppy discs, spreadsheets, databases, computer programs, and telephone records, which is or was at

any time in your possession, custody, or control or known or believed by you to exist or to have existed.

4. "Employee" means any former or present employee, officer, agent, representative, consultant, office, committee, department, division, or group within or retained by you.

5. "Person" means the plural as well as the singular and shall include any natural person and any non-profit organization, corporation, partnership, firm, joint venture, sole proprietorship, other legal business entity of any kind, and governmental agency, branch, office, or entity.

6. "You" or "Your" means the Defendants. "You" or "Your" also includes counsel for the Defendants, and all employees, agents, partners, officers, representatives, private investigators, and others who are aware of and/or in the possession, custody, or control of any Communication and/or Document.

7. "Plan" means the Amended and Restated Unfunded Deferred Compensation Agreement dated November 30, 1993 by and between Nanticoke Health Services, Inc. and Edward H. Hancock.

## INSTRUCTIONS

1. To the extent that the document requests do not incorporate a specific time limitation, it is deemed to require a response dating from 1971 to the present.

2. No part of the document requests should be not complied with because an objection is interposed to another part of the document requests.

3. The singular includes the plural and the plural includes the singular.

4.  "And" and "or" shall be construed conjunctively or disjunctively, as necessary, to make the request inclusive rather than exclusive.

5.  "Any," "each," "all," "every," and similar terms refer to "each and every" as well as to "anyone," as necessary to make the interrogatory inclusive rather than exclusive.

6.  If an objection is made to a document request or subpart thereof, the objection should state with reasonable particularity as required by Rule 34 all grounds for such objection. If a claim of privilege is asserted in objecting to a document request or subpart thereof, state the type of privilege asserted and the basis for its assertion.

7.  Pursuant to Rule 45, You are required to supplement or amend Your responses to this subpoena if further information is obtained between the time of Your responses through the completion of the action. You are also required to supplement Your production of Documents in the event that You gain possession, custody or control of responsive Documents in the future.

## DOCUMENT REQUEST

Any and all documents in your possession related to the Amended and Restated Unfunded Deferred Compensation Agreement. (See attached agreement and memorandum prepared by Ernst & Young)

AMENDED AND RESTATED

UNFUNDED DEFERRED COMPENSATION AGREEMENT

This Amended and Restated Unfunded Deferred Compensation Agreement is made this 30th day of November, 1993, by and between NANTICOKE HEALTH SERVICES, INC., a not for profit corporation organized under the laws of the State of Delaware (hereinafter the "Employer"), and EDWARD H. HANCOCK (hereinafter the "Employee").

The Background of this Agreement is is follows:

A. In 1986, the Employee was employed by Nanticoke Memorial Hospital, Inc., a not for profit corporation organized under the laws of the State of Delaware (the "Hospital"). Prior to August 16, 1986, the Hospital provided the Employee with deferred compensation equal to 20 percent of the Employee's base salary pursuant to a written plan (the "Plan").

B. When the Hospital was subsequently reorganized, the Hospital became a wholly-owned subsidiary of the Employer, Employee transferred his employment to the Employer and the Employer assumed the Hospital's obligations to Employee under the Plan.

C. The Plan is grandfathered pursuant to the Tax Reform Act of 1986, Section 1107(c)(3)(B) and IRS Notice 87-13, 1987-1 Cum. Bul. 432, Q&A 28.

D. This Agreement is to amend and restate the Plan without either altering the fixed percentage of deferred

1

compensation provided to Employee, or disturbing the grandfathered status of the Plan under the Tax Reform Act of 1986.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter contained, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. As an inducement to Employee to remain in his employment as the President of the Employer, in addition to the other compensation payable to the Employee, the Employer agrees to provide Employee with deferred compensation which will become payable upon the sooner of July 1, 2006, or Employee's termination of employment.

2. Each June 30 (or the date of termination of employment in the year of Employee's termination of employment), the Employer shall credit to a book reserve (the "Deferred Compensation Account") established for this purpose, 20 percent of Employee's base compensation for the calendar year (or portion of the year in the year of Employee's termination of employment). Such Deferred Compensation Account shall also be credited with earnings which would have been realized had the Deferred Compensation Account been invested and reinvested prior to July 1, 1994, in the same investments as the general funds of Nanticoke Memorial Hospital, and after June 30, 1994, in equal shares in each of the four following mutual funds: (1) Fidelity Contrafund, (2) Fidelity Growth & Income Fund,

2

(3) Fidelity Asset Manager and (4) Fidelity Utilities Income Fund.

The Employee agrees on behalf of himself and his designated beneficiaries to assume all risk in connection with the investment return on his Deferred Compensation Account. Title to and beneficial ownership of any assets, whether cash or investments, which the Employer may earmark to pay deferred compensation hereunder, shall at all times remain in the Employer, and the Employee and his designated beneficiaries shall not have any property interest whatsoever in any specific assets of the Employer.

3. The vested percentage of the balance credited to the Deferred Compensation Account shall be paid to the Employee (or his beneficiaries in the event of his death) over fifteen (15) years in sixty (60) quarterly payments, on the July 1, October 1, January 1, and April 1, following the Employee's termination of employment. His vested balance in the Deferred Compensation Agreement shall be computed based upon his date of termination of employment as follows:

| Date of Termination of Employment | Vested Percentage |
|---|---|
| Date of this Agreement through 6/30/94 | 80 percent |
| 7/1/94 through 6/30/95 | 90 percent |
| After 6/30/95 | 100 percent |

4. The beneficiaries of Employee who shall be entitled to any portion of his Deferred Compensation Account

3

not paid to the Employee prior to the Employee's death shall be his spouse if he is married at his death, or if he is not married at his death then his beneficiaries shall be his issue, per stirpes. In the event that due to the deaths of Employee, his spouse and issue, any portion of the Deferred Compensation Account is not paid, the remainder of said Account shall be paid to the Hospital.

5. Nothing contained in this Agreement and no action taken pursuant to the provisions of this Agreement, shall create or be construed to create a trust of any kind, or a fiduciary relationship among the Employer and the Employee, his designated beneficiaries or any other person. Nothing contained in this Agreement and no action taken pursuant to the provisions of this Agreement shall create or be construed to entitle Employee, his beneficiaries or any other person to any asset which the Employer now owns or may acquire with the object of funding its obligations hereunder. Any such assets of the Employer shall continue for all purposes to be a part of the general funds of the Employer, and no person shall on account of this Agreement acquire any right to receive payments from the Employer under this Agreement greater than the right of any other unsecured general creditor of the Employer.

6. The right of the Employee or any other person to any payment hereunder may not be assigned, transferred, pledged, or encumbered by Employee or any other person, and

4

any such attempted assignment, transfer, pledge or encumbrance shall be null and void.

7. If the Board of Directors of the Employer (or any committee to which the Board of Directors delegates this responsibility) shall find that any person to whom any payment is payable under this Agreement is unable to care for his affairs because of illness or accident, or is a minor, any payment due (unless a prior claim therefor shall have been made by a duly appointed guardian, committee or other legal representative) may be paid to the spouse, a child, a parent, or a brother or sister, a person designated under the applicable Uniform Gifts to Minors Act, or to any person deemed by the Board of Directors of the Employer to have incurred expense for such person otherwise entitled to payment, in such manner and proportions as the Board of Directors of the Employer may determine. Any such payment shall be a complete discharge of the liabilities of the Employer under this Agreement.

8. Any deferred compensation payable under this Agreement shall not be deemed salary or other compensation to the Employee for the purpose of computing benefits to which he may be entitled under any pension plan or other arrangement of the Employer for the benefit of its employees.

9. The Board of Directors of the Employer (or any committee to which the Board of Directors delegates this responsibility) shall have full power and authority to interpret, construe and administer this Agreement and the

5

Board's interpretations and construction thereof and actions thereunder shall be binding and conclusive on all persons for all purposes. No member of the Board of Directors of the Employer shall be liable to any person for any action taken or omitted in connection with the interpretation and administration of this Agreement, unless attributable to his own willful misconduct or lack of good faith.

10. This Agreement shall be binding upon and inure to the benefit of the Employer, its successors and assigns and the Employee and his heirs, executor, administrators and legal representatives.

11. This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware.

IN WITNESS WHEREOF, the Employer has caused this Agreement to be executed by its duly authorized officers and the Employee has hereunto set his hand and seal as of the date first above written.

Attest:

By: _____
Secretary of Board

(Corporate Seal)

NANTICOKE HEALTH SERVICES, INC.

By: _____
Chairman of Board

_____
Witness

_____
EDWARD H. HANCOCK

6

e

<ul><li>National Tax</li></ul>
1225 Connecticut Avenue, N.W.
Washington, D.C. 20036

<ul><li>Internal Correspondence</li></ul>

Tax Advisor/Client Communication
Privileged And Confidential

October 13, 2006

To:    Nanticoke Health Services, Inc. Tax Files

From:  Ira Mirsky

## Issues Related to Supplemental Retirement Arrangement and Retiree Medical Benefits Provided to Mr. Edward Hancock

The purpose of this memorandum is to provide an executive summary of issues related to both the supplemental retirement arrangement and retiree medical benefits provided to Mr. Edward Hancock in connection with the termination of his employment with Nanticoke Health Services, Inc.

### Facts

Nanticoke Health Services, Inc. (Nanticoke) is a tax-exempt organization which operates Nanticoke Memorial Hospital, and affiliated medical centers and outpatient services in Sussex County Delaware.

Nanticoke maintains a supplemental executive retirement plan (SERP) which provides a supplemental retirement benefit, in addition to the Nanticoke's tax-qualified retirement arrangements, to its former CEO and President – Mr. Edward Hancock. Mr. Hancock terminated his employment with Nanticoke in November of 2004, and the first of 60 quarterly installment payments from the SERP commenced on January 3, 2005. Mr. Hancock is divorced, and a portion of his SERP benefits are distributed directly to his former spouse (Barbara Johnson).

The SERP is a nonqualified deferred compensation (NQDC) arrangement which has been assumed by Nanticoke, in essentially the same form first established by an agreement between Mr. Hancock and the predecessor entity, Nanticoke Memorial Hospital, Inc., prior to August 16, 1986, following Nanticoke's 1993 reorganization.

Under the terms of the SERP, each year Nanticoke credited Mr. Hancock's SERP account with an amount equal to 20% of his annual base compensation. Mr. Hancock's account balance was equally invested in four Fidelity mutual funds identified in the SERP plan

Nanticoke Health Services, Inc. Tax Files                                Page 2
                                                              October 13, 2006

document. Mr. Hancock became entitled to his SERP account balance pursuant to the following vesting schedule:

- 80% vested upon continued employment through June 30, 1994;
- 90% vested upon continued employment through June 30, 1995;
- 100% vested upon continued employment *after* June 30, 1995;

Each year after 1995, Nanticoke continued to make fully vested contributions for Mr. Hancock's benefit under the SERP.

It is our understanding that no portion of Mr. Hancock's SERP benefit was taken into account as "wages", for FICA tax purposes, at the time of vesting. It is also our understanding that no tax information reporting or withholding was performed in connection with 2005 and 2006 SERP benefits distributions, both to Mr. Hancock and his former spouse.

Pursuant to Nanticoke's Separation Agreement with Mr. Hancock, he has also received a continuation of medical coverage for Mr. Hancock and his current spouse (Beth Hancock) until Mr. Hancock's 65th birthday. – It is our understanding that this benefit has not been taken into account as taxable compensation.

Nanticoke has retained Ernst & Young in order to advise on the correction of these and other outstanding 2005 and 2006 employment tax information reporting and withholding issues in connection with cash payments and other taxable benefits provided to Mr. Hancock pursuant to the terms of his Separation Agreement.

Issues

(1) What is the required tax treatment for the benefits provided under the SERP arrangement with Mr. Hancock? And what is Nanticoke's liability for any failure to report and withhold on these NQDC benefits for employment tax purposes?

(2) What is the required tax treatment for SERP benefits payments to Mr. Hancock's former spouse? And what is Nanticoke's liability for any failure to report and withhold on these SERP benefits to Mr. Hancock's former spouse?

(3) What is the FICA tax implication of Nanticoke's failure to take Mr. Hancock's SERP benefits into account as "wages," for FICA tax purposes, for each of the years of contribution/vesting?

(4) What alternatives (if any) are available for Nanticoke to avoid the unanticipated additional cost, both the Mr. Hancock and the Hospital, of the 6.2% Social Security tax on his SERP benefits?

Nanticoke Health Services, Inc. Tax Files

Page 3
October 13, 2006

(5) What is the required tax treatment of the continued medical coverage for Mr. Hancock and his current spouse? And what is Nanticoke's liability for the failure to take these benefits into account as additional taxable compensation for employment tax purposes?

Conclusions

(1) The NQDC arrangement with Mr. Hancock was established prior to August 16, 1986, and is "grandfathered" from taxation under IRC §457(f). Thus, the benefits provided under NQDC arrangement with Mr. Hancock will be subject to Federal income tax withholding (FITW), and Delaware state income tax withholding as the benefits are paid out. As discussed below, the benefits will also be subject to FICA taxation as the benefits are paid out pursuant to the NQDC rules under IRC §3121(v)(2) and the Regulations. These amounts constitute wages, and are subject to reporting on IRS Form W-2 for the year of payment.

Nanticoke is required to correct for its employment tax information reporting and withholding obligation in connection with the SERP distributions during 2005 and earlier periods in 2006, and could potentially mitigate its potential exposure for penalties and interest by voluntarily correcting these reporting and withholding errors. Pursuant to IRC §§3102(a) and 3402(a), Nanticoke has a joint and several liability for withholding the employee's share of FICA taxes and FITW, respectively. Nanticoke could also potentially be subject to accuracy-related penalties, and interest, in connection with its failure to properly report and withhold employment taxes on the payment of wages.

(2) The SERP benefits payments to Mr. Hancock's former spouse are subject to split reporting/taxation. For income tax purposes, the amounts are reported to the former spouse on Form 1099-MISC, Box 3 ("Other income"), with income taxes withheld and deposited as "non-wage withholding" with the IRS, and applicable State tax authorities (Delaware). However, for FICA tax purposes, the amounts are included as Social Security and Medicare wages (Boxes 3 and 5, respectively) on Mr. Hancock's Form W-2. FICA taxes are also withheld from the former spouse's distribution.[1]

As discussed at "(1)" above, Nanticoke is required to correct for its employment tax information reporting and withholding obligations. Further, Nanticoke faces substantial potential exposure for failing to correct these errors.

(3) The FICA tax implication of Nanticoke failing to take these SERP benefits into account as "wages," for FICA tax purposes, in each of the years of contribution/vesting is that Mr. Hancock will incur a liability for the 6.2% Social Security component of the FICA tax on his benefits for each of the next 13 years. Similarly, Nanticoke will have a corresponding liability for the employer's share of Social Security taxes.

---

[1] Rev. Rul. 2002-22 provides a limited exception to this general rule, described below.