IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA R. JOHNSON, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | C. A. No. 07-CV-00685 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| NANTICOKE MEMORIAL HOSPITAL, | ) | |
| INC., AND NANTICOKE HEALTH | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

Michael P. Migliore, Esquire (Del. Bar #4331)
STRADLEY RONON STEVENS & YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 576-5850

and

Patrick R. Kingsley, Esquire (Admitted *Pro Hac Vice*)
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

Attorneys for Defendants,
Nanticoke Memorial Hospital, Inc. and
Nanticoke Health Services, Inc.

Dated: April 15, 2008

L # 719567 v.1

## TABLE OF CONTENTS

I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ...............................1

II.   SUMMARY OF ARGUMENT ...................................................................................1

III.  STATEMENT OF FACTS ..........................................................................................2

IV.   LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS.............................4

V.    PLAINTIFF HAS FAILED TO PLEAD FACTS THAT DEMONSTRATE
      HER STANDING TO ASSERT AN ERISA CLAIM...................................................4

      A.    ERISA's Statutory Standing Requirements.......................................................4

      B.    Plaintiff is Neither a Participant or Beneficiary of the ARUDCA.....................5

      C.    The Ordinary Divorce Order Does Not Alter the Terms of the ARUDCA .......6

IV.   CONCLUSION............................................................................................................9

## TABLE OF CITATIONS

### CASES

Bennett v. Conrail Matched Sav. Plan Admin. Comm.,
168 F.3d 671 (3d Cir. 1999)..............................................................................5

Dewitt v. Penn-Del Directory Corp.,
106 F.3d 514 (3d Cir. 1997)...........................................................................4, 5

Files v. ExxonMobil Pension Plan,
428 F.3d 478 (3d Cir. 2005)..............................................................................6

Graden v. Conexant Sys. Inc.,
496 F.3d 291 (3d Cir. 2007)..............................................................................5

Pfizer, Inc. v. Ranbaxy Labs., Ltd.,
525 F. Supp. 2d 680 (D. Del. 2007)..................................................................4

Samaroo v. Samaroo,                                                             8
195 F.3d 185 (3d Cir. 1999)

Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan,
439 F. Supp. 2d 337 (D. Del. 2006)..................................................................4

### STATUTES

29 U.S.C. § 1001 et seq...................................................................................1

29 U.S.C. § 1002..........................................................................................1, 5

29 U.S.C. § 1056(d). ..................................................................................2, 6-8

29 U.S.C. § 1132..........................................................................................1, 5

L # 719567 v.1

## I.      STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff, Barbara R. Johnson ("Plaintiff"), commenced this action on October 30, 2007, alleging that Defendants, Nanticoke Memorial Hospital, Inc. ("NMH") and Nanticoke Health Services, Inc. ("NHS") (collectively "Nanticoke"), have failed to provide Plaintiff with benefits due to her pursuant to her ex-husband's pension plan and divorce agreement. The pleadings in this matter are closed and parties have exchanged initial and supplemental disclosures in accordance with Federal Rule of Civil Procedure 26(a).

## II.      SUMMARY OF ARGUMENT

As a matter of law, Nanticoke is entitled to judgment on the pleadings for the following reasons:

1.      The pleadings in this matter are closed.

2.      As evidenced by the pleadings, Plaintiff lacks standing to assert a claim under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA").

3.      Only plan participants or beneficiaries, as defined in 29 U.S.C. §§ 1002(7) and 1002(8), have standing to bring an ERISA claim to recover employee pension plan benefits. 29 U.S.C. § 1132(a)(1)(B).

4.      Plaintiff asserts a claim under § 1132(a)(1)(B) to recover benefits she alleges are owed to her under the terms of the Amended and Restated Unfunded Deferred Compensation Agreement ("ARUDCA") and the Stipulation and Order ("ordinary Divorce Order") of her divorce from Edward Hancock ("Hancock"). Plaintiff also asserts a claim under § 1132(g)(1) to recover attorney's fees and costs.

5.      Plaintiff lacks standing because she is neither a participant nor beneficiary in the ARUDCA, which is the employee pension plan that forms the basis of her complaint.

- 1 -

6.     The terms of the ARUDCA do not identify Plaintiff as a participant or beneficiary. To the contrary, Plaintiff's ex-husband, Hancock, is the sole participant in the ARUDCA. The ARUDCA further provides that the eligible beneficiaries are, at the time of Hancock's death, Hancock's spouse and/or issue. Plaintiff does not qualify as either.

7.     The terms of the ARUDCA are not alterable except by a Qualified Domestic Relations Order ("QDRO"). 29 U.S.C. § 1056(d).

8.     No QDRO pertaining to the ARUDCA is alleged to exist.

9.     The ordinary Divorce Order ending Plaintiff's marriage to Hancock does not meet the requirements of a QDRO, nor is it alleged to by Plaintiff. See 29 U.S.C. § 1056(d)(3)(C).

10.    Therefore, Plaintiff has no standing to pursue any ERISA claims.

11.    In her complaint, Plaintiff only asserts ERISA claims.

12.    Thus, Defendants are entitled to judgment on the pleadings as a matter of law on all counts.

## III.    STATEMENT OF FACTS

Plaintiff is the ex-wife of Hancock. (Compl. ¶ 8.) Hancock was formerly the President of NMH. (Compl., Ex. B, hereinafter referred to as "ARUDCA", at 2.) As part of his deferred compensation package, Hancock received an amount equivalent to 20 percent of his base compensation pursuant to a retirement plan he held with NMH. (Id.) In 1993, when NMH was reorganized, Hancock entered into the ARUDCA with NHS to continue receiving the same benefits. (Id. at 1.)

The ARUDCA is one of five pension/retirement plans Hancock held as President and CEO of NHS. (Compl., Ex. A, hereinafter referred to as "Divorce Order," at 4-5.) The ARUDCA makes clear that Hancock is the sole participant, and his eligible beneficiaries are his

- 2 -

spouse at the time of his death or his issue.  (ARUDCA at 1, 3-5.)  The ARUDCA also contains a

non-assignment clause.  (Id. at 4-5.)

On August 18, 2003, Plaintiff and Hancock entered into an ordinary Divorce

Order, which provided in part for the division of their marital property, including Hancock's five

pension/retirement plans.  (Divorce Order at 10.)  In paragraph 7(c)(iii) of the ordinary Divorce

Order, the parties agreed that as to Hancock's three qualified retirement plans, Hancock would

"assist in the filing of the Qualified Domestic Relations Order or Orders."  (Divorce Order at 4.)

None of those plans are at issue in this litigation.  Significantly, the ordinary Divorce Order does

not include a provision directing the parties to enter a QDRO for the two non-qualified

retirement plans, one of which is the ARUDCA.  (See Divorce Order at 5-6.)  Paragraph 7(d) of

the ordinary Divorce Order, which discusses the ARUDCA, acknowledges that the ordinary

Divorce Order is not a QDRO.  (Id.)  And, in point of fact, Plaintiff does not allege that a QDRO

was entered pertaining to the ARUDCA.

Shortly after his divorce, Hancock retired from NHS and thus became entitled to

receive his retirement benefits, including the benefits due to him under the ARUDCA.  (Compl. ¶

7; ARUDCA at 2.)  As an accommodation for Hancock, Nanticoke voluntarily sent a portion of

Hancock's ARUDCA benefits directly to Plaintiff.  (Answer ¶ 8.)  Nanticoke has since elected to

cease this accommodation, and currently sends the full amount of benefits to Hancock as called

for in the ARUDCA.  (Id.)

Plaintiff now disputes the payment of FICA taxes by Nanticoke as reducing

benefit payments owed to her under the ARUDCA and ordinary Divorce Order.  (Compl. ¶ 9, 13,

14.) Since Plaintiff is neither a participant nor beneficiary of the ARUDCA, and the ordinary

- 3 -

Divorce Order has not amended the terms of the ARUDCA because it is not a QDRO, Plaintiff lacks standing to assert her claims.

## IV.   LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

The purpose of a motion for judgment on the pleadings is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.  See Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan, 439 F. Supp. 2d 337, 341 (D. Del. 2006) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that apply to a motion to dismiss under Rule 12(b)(6).  Toy, 439 F. Supp. 2d at 341.  The governing standard is whether the plaintiff has alleged sufficiently detailed facts to "raise a right to relief above the speculative level." Pfizer, Inc. v. Ranbaxy Labs., Ltd., 525 F. Supp. 2d 680, 684-85 (D. Del. 2007) (citing Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1965 (2007)).

## V.   PLAINTIFF HAS FAILED TO PLEAD FACTS THAT DEMONSTRATE HER STANDING TO ASSERT AN ERISA CLAIM

### A.   ERISA's Statutory Standing Requirements

The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") was "designed to promote the interests of employees and their beneficiaries in employee benefit plans." Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997) (quoting Shaw v. Delta Air Lines, 463 U.S. 85, 90 (1983)).  In providing comprehensive federal regulation of pension plans, "the major concern of Congress was to ensure that *bona fide* employees with long years of employment and contributions realize anticipated pension benefits." Bennett v. Conrail Matched Sav. Plan Admin. Comm., 168 F.3d 671, 677 (3d Cir. 1999) (quoting Malia v. Gen. Elec. Co., 23 F.3d 828, 830 (3d Cir. 1994)).

Accordingly, Congress created a private right of action for a plan "participant" or "beneficiary" to "recover benefits due to him under the terms of his plan, to enforce his rights

- 4 -

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

29 U.S.C.A. § 1132(a)(1)(B).  Under ERISA, "'participant' and 'beneficiary' are distinct terms

of art.  The former refers to an employee or former employee who takes part in his employer's

plan.  29 U.S.C. § 1002(7). The latter is a person designated by a participant to recover benefits

in the event of the participant's death.  29 U.S.C. § 1002(8)."  Graden v. Conexant Sys. Inc., 496

F.3d 291, 295 n. 4 (3d Cir. 2007).  Thus, in order to assert a claim under ERISA, a plaintiff must

plead facts that demonstrate she is either a participant or beneficiary under an ERISA-governed

plan.

### B.    Plaintiff is Neither a Participant or Beneficiary of the ARUDCA

Plaintiff fails to allege facts that establish her standing to assert an ERISA claim,

thus failing to demonstrate she has a right to any relief beyond a speculative level.   Plaintiff has

asserted her claim to recover benefits under the ARUDCA pursuant to section 1132(a)(1)(B).

(Compl. ¶ 12-18.)  To assert this claim, Plaintiff must satisfy ERISA's statutory standing

requirements.  29 U.S.C. § 1132(a); Graden, 496 F.3d at 295.  Thus, Plaintiff must demonstrate

that she is either a "participant" or "beneficiary" of the ARUDCA.

The entitlement to benefits under any ERISA plan is governed by the language of

the plan itself.  Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997).  The

terms of the ARUDCA indicate that Hancock is its sole participant.  (ARUDCA at 1-2.)  The

ARUDCA further states

> The *beneficiaries of Employee* who shall be entitled to any portion
> of his Deferred Compensation Account not paid to Employee prior
> to Employee's death *shall be his spouse if he is married at his
> death, or* if he is not married at his death, then his beneficiaries
> shall be *his issue*, per stirpes.  In the event that due to the deaths of
> Employee, his spouse and issue, any portion of the Deferred
> Compensation plan is not paid, the remainder of said Account shall
> be paid to the Hospital.

L # 719567 v.1

(Id. at 3-4) (emphasis added.)  This section of the ARUDCA definitively precludes Plaintiff from becoming a beneficiary.  She is divorced from Hancock and is not his issue.  Moreover, the ARUDCA provides for complete disposition of any assets left in the plan by directing leftover funds back to the Hospital.  Thus, Plaintiff is not a beneficiary of the ARUDCA and could never conceivably be a beneficiary under any circumstances.

## C.    The Ordinary Divorce Order Does Not Alter the Terms of the ARUDCA

Generally, benefits under ERISA pension plans are non-assignable pursuant to ERISA's anti-alienation provision. 29 U.S.C. § 1056(d)(1).  Likewise, the ARUDCA contains a non-assignment clause:

> The right of the Employee or any other person to any payment
> hereunder may not be assigned, transferred, pledged, or
> encumbered by Employee or any other person, and any such
> attempted assignment shall be null and void.

(ARUDCA at 4-5.)  Consistent with ERISA law, this non-assignment clause prevents Hancock from assigning away his right as a participant in the ARUDCA.

ERISA's anti-alienation clause contains one narrow exception for qualified domestic relations orders ("QDRO"), which can alter the terms of a pension plan where certain requirements are satisfied.  29 U.S.C. § 1056(d)(3)(B); Files v. ExxonMobil Pension Plan, 428 F.3d 478 (3d Cir. 2005).  A QDRO is any judgment, decree, or order made pursuant to a state domestic relations law which "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B)(i)(I).  Importantly, only "qualified" domestic relations orders are exempt; ordinary domestic relations orders are expressly made subject to the anti-assignment provision.  See id. §1056(d)(3)(A).  Pursuant to

section 1056(d)(3)(C), a domestic relations order is a QDRO "*only if such order clearly specifies*":

    (i)     the name and the last known mailing address (if any) of the participant and *the name and mailing address of each alternate payee covered by the order*,

    (ii)    the amount or percentage of the participant's benefits *to be paid by the plan to each such alternate payee*, or the manner in which such amount or percentage is to be determined,

    (iii)   the *number of payments or period to which such order applies*, and

    (iv)   each plan to which such order applies.

Id. §1056(d)(3)(C) (emphasis added).  The term "alternate payee" means "any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order *as having a right to receive* all, or a portion of, the benefits payable under a plan with respect to such participant."  Id. § 1056(d)(3)(K) (emphasis added).  A person who is an "alternate payee" under a QDRO is a "beneficiary" for purposes of an ERISA plan.  Id. § 1056(d)(3)(J).

      A QDRO for the ARUDCA has not been entered.  Plaintiff does not allege the existence of a QDRO for the ARUDCA.  This conclusion is further underscored by the contrasting provisions contained in the ordinary Divorce Order.  The ordinary Divorce Order specifically provides that a QDRO will be entered for Hancock's three qualified retirement plans.  (Divorce Order at 4.)  Conspicuously, the ordinary Divorce Order makes no such provision for the two non-qualified plans, one of which is the ARUDCA.  (Divorce Order at 5-6.)  Had Plaintiff and Hancock intended that the ARUDCA be governed and altered by a QDRO, they could have provided for the creation of one as they did with respect to the qualified plans.

      The ordinary Divorce Order does not qualify as a QDRO itself.  "Congress has required QDROs to be quite specific in order to convey ERISA benefits."  Samaroo v. Samaroo, 195 F.3d 185, 188 (3d Cir. 1999).  The ordinary Divorce Order does not meet the technical

L # 719567 v.1

requirements of section 1056(d)(3)(C). Namely, the ordinary Divorce Order does not identify

Plaintiff as an alternate payee, it does not include the mailing address of Plaintiff as the alternate

payee, it does not specific the amount or percentage of the participant's benefits *to be paid by the*

*plan*, and it does not specify the number of payments or period to which such order applies.

Instead, the ordinary Divorce Order states

> It is the intention of the parties that Wife shall be entitled to
> receive her portion of the non-qualified plans *just as if* she had
> received her share by Qualified Domestic Relations Order . . . This
> account may not be divided. *It is the objective of the parties* that
> Wife and Husband will *divide the account 50/50 based on the*
> *value of the account as of December 31, 2002.* Wife's share of the
> account will be designated as (B) and Husband's share will be
> designated as (E). Wife will have the authority to make investment
> decisions prior to Husband's retirement. . . . Wife shall remain the
> beneficiary of this plan until Husband's retirement and until she
> has received her share of the plan.

(Divorce Order at 5-6.) The ordinary Divorce Order does not confer upon Plaintiff a right to

receive benefits from the plan itself. Rather, Plaintiff and Hancock agreed amongst themselves

to segregate a portion of the account at the end of 2002, intending that it be approximately half of

the value of the account at that point in time. This arrangement does not impact the terms of the

ARUDCA because it does not designate any amount or percentage that should be paid to

Plaintiff *by the plan*. Further, the ordinary Divorce Order makes no provision for a subscribed

period of time or number of payments over which Plaintiff would receive payments from the

ARUDCA.

      Plaintiff does not allege in her Complaint that this ordinary Divorce Order is a

QDRO. The gravamen of this section of the ordinary Divorce Order indicates that Plaintiff and

Hancock created an agreement between and amongst themselves, by which Hancock would

distribute portions of his ARUDCA payments previously allocated to Plaintiff under their

divorce agreement. Plaintiff's allegations do not suggest any alternate reading. Ultimately,

- 8 -

terms of the ordinary Divorce Order fail to meet the QDRO statutory requirements, preventing it from altering the terms of the ARUDCA.

Therefore, since the Plaintiff is neither a participant nor beneficiary in the ARUDCA by its operative terms, and no QDRO exists to amend those terms, Plaintiff lacks standing to bring an ERISA claim to recover benefits under the ARUDCA. To such end, Plaintiff has not stated sufficiently detailed facts to raise a right to relief under ERISA beyond a speculative level, warranting judgment on the pleadings in favor of Defendant Nanticoke.

## VI.    CONCLUSION

For all of the foregoing reasons, the Court should grant Nanticoke's Motion for Judgment on the Pleadings.

Respectfully submitted,

*Michael P. Migliore*

Michael P. Migliore, Esquire (Del. Bar #4331)
STRADLEY RONON STEVENS & YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 576-5850
mmigliore@stradley.com

and

Patrick R. Kingsley, Esquire (Admitted *Pro Hac Vice*)
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

Attorneys for Defendants,
Nanticoke Memorial Hospital, Inc. and
Nanticoke Health Services, Inc.

Dated: April 15, 2008

- 9 -

L # 719567 v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BARBARA R. JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NANTICOKE MEMORIAL HOSPITAL, | ) |
| INC., AND NANTICOKE HEALTH | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

C. A. No. 07-CV-00685 (SLR)

### NOTICE OF SERVICE

To:     Eric M. Andersen
        Cooch and Taylor
        824 N. Market Street, Suite 1000
        Wilmington, DE 19801
        (Counsel for Plaintiff)

On April 15, 2008, a copy of the (i) *Motion of Defendants for Judgment on the Pleadings* and (ii) *Defendants' Opening Brief in Support of its Motion for Judgment on the Pleadings* were served via hand-delivery at the address noted above, and via electronic service by way of the Court's CM-ECF filing system upon the above-named counsel.

Dated: April 15, 2008

*michael P. Migliore*

Michael P. Migliore (DE Bar #4331)
STRADLEY RONON STEVENS & YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
Telephone:  (302) 576-5850
Facsimile:  (302) 576-5858

Counsel for Defendants

L # 740525 v.1