IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA R. JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 07-CV-00685 (SLR) |
| | ) | |
| v. | ) | |
| | ) | |
| NANTICOKE MEMORIAL HOSPITAL, | ) | |
| INC., and NANTICOKE HEALTH | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF AGAINST
MOTION FOR JUDGMENT ON THE PLEADINGS**

Eric M. Andersen (No. 4376)
H. Alfred Tarrant, Jr. (No. 445)
COOCH AND TAYLOR, P.A.
824 North Market Street
Suite 1000
Wilmington, DE 19801
302-984-3800
*Attorneys for the Plaintiff*

Dated: May 2, 2008

# TABLE OF CONTENTS

TABLE OF CITATIONS.................................................................... iii

I.   SUMMARY OF NATURE AND STAGE OF PROCEEDINGS.......... 1

II.  SUMMARY OF ARGUMENT............................................................ 1

III. STATEMENT OF FACTS................................................................... 1

IV.  LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS........ 2

V.   ARGUMENT........................................................................................ 2

   A. It is too late to claim that the domestic relations order is not a QDRO................................................................................... 2

   B. The domestic relations order attached to the Complaint is a QDRO.................................................................................. 4

      1. Names and Last Known Mailing Address.......................... 5

      2. Amount of Percentage of Benefits and Manner of Payment...................................................................... 6

      3. Number of Period of Payments............................................ 6

      4. Identification of Plan to Which the Order Applies............. 7

   C. Nanticoke is equitably stopped from asserting that the Plaintiff is not a beneficiary................................................................ 7

      1. Material Misrepresentation................................................. 7

      2. Reasonable and Detrimental Reliance Upon the Representation............................................................... 8

      3. Extraordinary Circumstances............................................. 8

CONCLUSION............................................................................................ 9

TABLE OF CITATIONS

Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan,
439 F.Supp. 2d 337, 341 (D. Del. 2006)..........................................................1

Files v. ExxonMobile Pension Plan,
428 F.3d 478, 489-90 (3d Cir. 2005)..............................................................3

Smith v. Estate of Smith,
248 F.Supp.2d 348, 355 (D. N.J. 2003).....................................................4, 5, 7

Metro Life Ins.Co. v. Wheaton,
42 F.3d 1080, 1085 (7th Cir. 1994)................................................................5

Samaroo v. Samaroo,
193 F.3d 185, 188 fn. 2 (3d Cir. 1999)............................................................5

Curcio v. John Hancock Mut. Life Ins. Co.,
33 F.3d 226, 235 (3d Cir. 1994)...............................................................7, 8

29 U.S.C. §§ 1056.................................................................................2, 3, 4

I.  SUMMARY OF NATURE AND STAGE OF PROCEEDINGS

Plaintiff hereby adopts the Defendants' version of the nature and stage of the proceedings.

II. SUMMARY OF ARGUMENT

Nanticoke is not entitled to judgment on the pleadings for the following reasons:

1. Because 18 months has passed since the plan administrator received the domestic relations order, accepted the order and followed the order, Nanticoke is precluded from challenging whether the order is a "qualified domestic relations order" under the ERISA statutory regime.

2. Because the ERISA federal common law does not require strict compliance with the form requirements of QDROs to enforce domestic relation relations orders against plan administrators, the domestic relations order attached to the Complaint is a QDRO.

3. Because Nanticoke accepted and followed the domestic relations order for years, it is equitably estopped from determining that the domestic relations order was not a QDRO.

III. STATEMENT OF FACTS

Plaintiff adopts Defendants' Statement of the Fact except to the extent that Defendants add facts for the Court to consider by adding new factual allegations in its Answer. A motion for judgment on the pleadings under Federal Rule of Procedure 12(c) is govern by the same standards that apply to motion to dismiss under Rule 12(b)(6). Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan, 439 F.Supp. 2d 337, 341 (D. Del. 2006). The Court considers the allegations within the four corners of the Complaint – not the Complaint and the Answer. If the Defendants wishes to rely upon its new factual allegations in the Answer to support its

motion on the pleadings, then the Motion should be converted to one for summary judgment. R. 12(d).

Defendants have alleged that the payments made directly to the Plaintiff based upon the domestic relations order attached to the Complaint (the "DRO") was an "accommodation." In addition, they have stated since the Action has commenced, they have stopped making direct payments to the Plaintiff pursuant to the domestic relations order attached to the Complaint. These factual allegations are crucial to their Motion because at no time before the Complaint has been filed did the Defendants indicate to anyone that the DRO was not a QDRO and that Plaintiff was not a beneficiary who has standing to sue to claim benefits. Because Defendants cite to the Answer and not the Complaint for these factual allegations in support of their Motion, the Motion should be denied or converted to one for summary judgment.

IV.   LEGAL STANDARD FOR JUDGMENT ON THE PLEADINGS

Plaintiff adopts Defendants' Legal Standard regarding judgment on the pleadings.

V.    ARGUMENT

Defendants' argument is that Plaintiff lacks standing to directly assert claims against the plan administrator of the ARUDCA - the Defendants – because Plaintiff is not a "beneficiary" as defined by ERISA. They claim that Plaintiff is not a "beneficiary" because the domestic relations order attached to the Complaint is not a "qualified domestic relations order" as defined by ERISA.

**A.    It is too late to claim that the domestic relations order is not a QDRO.**

The statutory QDRO requirements expressly contemplate a "qualification" process by which plans, once on notice of a state court domestic relations order, will determine whether a state court DRO is sufficient to alter existing plan obligations. 29 U.S.C. §§ 1056(d)(3)(H)(i)-

2

(v). This "qualification" process commences with a plan's notice of the DRO. The statute expressly states that once a plan receives a DRO, within a "reasonable period," the administrator shall determine whether that order is a QDRO, 29 U.S.C. §§ 1056(d)(3)(G)(i)(II)., and that each plan shall establish reasonable procedures to determine the qualified status of domestic relation orders, 29 U.S.C. §§ 1056(d)(3)(G)(i)(I)-(III). The ERISA statutes contemplates and the plan establishes the process by which a DRO is "qualified." Essential to this "qualification" process is the statutory requirement that the plan take steps to ensure the preservation of benefits that are otherwise payable to which the determination of QDRO status is undertaken. 29 U.S.C. §§ 1056(d)(3)(H)(i) ("during any period in which the issue of whether a domestic relations order is a . . . [QDRO] . . . the plan administrator shall separately account for the amounts . . . which would otherwise have been payable to the alternate payee . . .") During the first 18 months after which the benefits become payable, the plan must segregate the benefits potentially payable to the alternate payee. 29 U.S.C. §§ 1056(d)(3)(H)(v). ERISA contemplates further state court proceedings during the 18 month ADRO determination period in which the alternate payee can sure defects in the original DRO by obtaining modification to the original DRO in order to enforce it as a QDRO. 29 U.S.C. §§ 1056(d)(3)(H)(ii) ("[i]f witin the 18 month period . . . the order (or modification thereof) is determined to be a . . . [QDRO] . . . .)). It is only after this 18 month period has expired that the putative alternate payee loses the right to uphold payment of plan proceeds to the designated beneficiary. 29 U.S.C. §§ 1056(d)(3)(H). See also Files v. ExxonMobile Pension Plan, 428 F.3d 478, 489-90 (3d Cir. 2005) (for a similar explanation of the "qualification process").

The Defendants received the DRO attached to the Complaint and started to followed it since February 2005 by making distributions directly to Plaintiff. (Compl. ¶ 9). By not

3

informing the Plaintiff back in 2003 that the DRO did not qualify as a QDRO after receiving notice and by following the DRO in 2005, the Defendants are precluded by statute from asserting the DRO is not a QDRO.

    B.    **The domestic relations order attached to the Complaint is a QDRO.**

The purpose behind the four requirements cited by Defendants that must be contained in a QDRO "is to reduce the expense of ERISA plans by sparing plan administrators the grief they experience when because of uncertainty concerning the identity of the beneficiary they pay the wrong person, or arguably the wrong person, and are sued by a rival claimant." Smith v. Estate of Smith, 248 F.Supp.2d 348, 355 (D. N.J. 2003) (internal citations omitted). A "domestic relations order" is any judgment, decree, or order made pursuant to a State domestic relations law that relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant. 29 U.S.C. § 1056(d)(3)(B)(ii). A domestic relations order must clearly specify the following four items in order to be considered "qualified": (1) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order; (2) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined; (3) the number of payments or period to which such order applies; and (4) each plan to which such order applies. 29 U.S.C. §§ 1056(d)(3)(C)(i)-(iv).

The fact that the DRO does not track the language of 29 U.S.C. § 1056(d)(3)(C) is not outcome determinative. Smith, 248 F.Supp.2d at 355. The Court may search throughout the DRO and the referenced Plan Document itself to find the 4 essential pieces of information required - including reviewing the Preamble of the stipulated order and the Plan Document itself.

Id. at 356. "It is asking too much of domestic relations lawyers and judges to expect them to dot every *i* and cross every *t* in formulating divorce decrees that have ERISA implications. Ideally, every domestic relations lawyer should be conversant with ERISA, but is unrealistic to expect all of them to be." Id. at 355, fn. 3 (citing Metro Life Ins.Co. v. Wheaton, 42 F.3d 1080, 1085 (7th Cir. 1994)).

Defendants cite a sentence within a footnote in Samaroo v. Samaroo, 193 F.3d 185, 188 fn. 2 (3d Cir. 1999) for the proposition that strict compliance with the technical requirements determines whether a domestic relations order is a QDRO. Because the issue in Samaroo was whether a domestic relations order had the effect of increasing plan liability than what was originally called for in the plan rendering the putative QDRO unenforceable as to the plan, Samaroo is not applicable in determine the preceding question at issue here of whether the basic requirements of a QDRO is satisfied.

The DRO states that "It is the intention of the parties that [Plaintiff] shall be entitled to receive her portion of the non-qualified plans just as if she had received her share by Qualified Domestic Relations Order." Section 7(d).

    1.    <u>Names and Last Known Mailing Address</u>

The Section 5 of the DRO provides that "The parties jointly own a residence at 20 Barley Run, Seaford, Delaware, and a residence at 1353 Island Point Road, Heathsville, Virginia. With respect to these properties: (a) Wife shall hereafter be the sole owner of the Seaford property which shall be . . . . " and " . . . (b) Husband shall hereafter be the sole owner of the Virginia property . . ."

Smith found the participant's and alternate payee's address in the preamble of the domestic relations order. Smith, 248 F.Supp.2d at 356.

2. <u>Amount or Percentage of Benefits and Manner of Payment</u>

Section 7(d) of the DRO provides that

"With respect to the deferred compensation plan, there are options for distribution that each party will make at the date of Husband's retirement. By way of example, if Wife elects a lump sum distribution rather than an annuity payment, Wife will reimburse Husband for taxes due as a result of any distribution made to Wife. If an annuity option is elected, Wife's payment will be reduced by federal income taxes. Husband will provide Wife with supporting documentation on taxes due as a result of any distributions to her. Nanticoke Memorial Hospital, under current tax guidelines, has established account no. 10837JJ000 at Mellon Private Asset Management, which is associated with the deferred compensation plan. This account may not be divided. It is the objective of the parties that Wife and Husband will divide the account 50/50 based on the value of the account as of December 31, 2002. Wife's share of the account will be designated as (B) and Husband's share will be designated as (E). Wife will have the authority to make investment decisions prior to Husband's retirement. Wife's allocated share of his account will be adjusted for gains and losses from December 31, 2002. ***Wife shall remain the beneficiary of his plan until Husband's retirement and until she has received her share of the plan.***" (emphasis added).

The stated benefit in <u>Smith</u> - "Husband . . . . does hereby irrevocably assign to Wife the sum of 50% of his said pension" and "[i]f, a death benefit is paid in lieu of the pension then a minimum of 50% of that death benefit shall be paid to wife" - satisfied the second element of a QDRO. <u>Id</u> at 356.

3. <u>Number or Period of Payments</u>

The Court may look to the plan document itself instead of the domestic relations order to determine the number or period of payments. <u>Id.</u> "The vested percentage of the balance credited to the Deferred Compensation Account shall be paid to the Employee (or his beneficiaries in the event of his death) over fifteen (15) years in sixty (60) quarterly payments, on the July 1, October 1, January 1, and April 1,, following the Employee's termination of employment." Section 3 of the ARUDCA attached as Exhibit A to the Complaint.

6

4. <u>Identification of the Plan to Which the Order Applies</u>

"Husband is also a participant in two non-qualified retirement plans through Nanticoke Heath Services. These are the Amended and Restated Unfunded Deferred Compensation Agreement dated November 30, 1993." Section 7(d) of the ARUDCA. In <u>Smith</u>, the domestic relations order was recognized as a QDRO even though it did not even identify the plan by name. <u>Smith</u>, 248 F.Supp.2d at 357 ("Indeed, the PSA does not mention any other plan and clearly explains that Barbara Smith is being assigned one half of Mark Smith's pension entitlement in recognition of the fact that his 'employment occurred completely during the course of the marriage.'")

C.   **Nanticoke is equitably estopped from asserting that the Plaintiff is not a beneficiary.**

Assuming the court finds that the DRO is not a QDRO which may be challenged 2 years after the plan distributions commenced, Plaintiff requests that the Motion is denied so that she may amend her Complaint and establish facts to show that the Defendants are estopped from claiming that she is not a beneficiary. When asserting equitable estoppel in the context of ERISA litigation, the plaintiff must establish (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances. <u>Curcio v. John Hancock Mut. Life Ins. Co.</u>, 33 F.3d 226, 235 (3d Cir. 1994).

1.   <u>Material Misrepresentation</u>

Plaintiff has relied upon the following statement by John Hancock who was the chief executive officer of the Defendants at the time the DRO was entered: "Wife shall remain the beneficiary of [the ARUDCA] until Husband's retirement and until she has received her share of the plan." Nanticoke is taking the position that because Plaintiff is not a beneficiary under the

7

plan documents she may not sue if she believes she is not being paid her full benefits under the DRO. Because standing to sue the plan administrator for benefits under a plan is material, Nanticoke may be equitably estopped from asserting that Plaintiff is not a beneficiary.

        2.       Reasonable and Detrimental Reliance upon the Representation .

Because John Hancock was the Chief Executive Officer of the Defendants at time of the representation that Plaintiff was a beneficiary, it was reasonable to rely upon Mr. Hancock's representation that his ex-wife was a beneficiary of a plan that he ultimately controlled through his position at the company.

John Hancock promised to "cooperate in causing the issuance of such Qualified Domestic Relations Orders or other documents as shall be necessary to implement the provisions of paragraph 7." Section 7(g) of the DRO. Plaintiff detrimentally relied upon the Defendants top representative to establish Plaintiff as a beneficiary. Plaintiff detrimentally relied upon the plan administrator who did not alert the Plaintiff to request the Family Court of Delaware to revise the DRO because the plan administor began making payments directly to Plaintiff (Compl. ¶ 9) from her segregated account the investment portfolio she managed while her ex-husband was still working (Section 7(d) of the DRO) .

        3.       Extraordinary Circumstances

"Extraordinary circumstances" have not been defined but the Third Circuit relies upon caselaw to establish the parameters. Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 237 (3d Cir. 1994). The standard of review is whether there are facts that have been presented to Court to allow the fact finder to determine that extraordinary circumstances exist. Id. at 238. The Court looks to whether the plan administrator had a "change of heart" to find extraordinary circumstances. Id. From day of entry of the DRO till her ex-husband's retirement (Oct. 2003 to

8

Feb. 2005), she had the ability to manage her separate investment account for the ARUDCA established as a result of the DRO. Section 7(d) of the DRO. From her husband's retirement till this Action was filed, Plaintiff was receiving benefits directly from the Defendants. (Compl. ¶¶ 9-10). Because Defendants now expect Plaintiff to pay for its payroll tax reporting errors while the participant was still an employee and married to the Plaintiff, (Compl. ¶10), through reducing her benefits under the ARUDCA by claiming that she was never a beneficiary is an extraordinary circumstance.

## VI. CONCLUSION

For all of the foregoing reasons, the Court should deny Nanticoke's Motion for Judgment on the Pleadings.

COOCH AND TAYLOR, P.A.

/s/ Eric M. Andersen
Eric M. Andersen (No. 4376)
H. Alfred Tarrant, Jr. (No. 445)
824 North Market Street
Suite 1000
Wilmington, DE 19801
302-984-3800
*Attorneys for the Plaintiff*

Dated: May 2, 2008

9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARBARA R. JOHNSON | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.  07-685-***-SLR |
| | ) | |
| v. | ) | |
| | ) | |
| NANTICOKE HEALTH SERVICES, INC. | ) | Demand for Jury Trial |
| and NANTICOKE MEMORIAL HOSPITAL, | ) | |
| INC. | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE OF SERVICE

TO:  Michael P. Migliore, Esquire
Stradley Ronon Stevens & Young, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801

On May 2, 2008, a copy of Plaintiff's Answering Brief Against Motion for Judgment on the Pleadings were served via the Court's CM-ECF filing system upon the above-named counsel.

COOCH & TAYLOR,  P.A.

_____
Eric M. Andersen (No. 4376)
H. Alfred Tarrant, Jr. (No. 445)
824 N. Market Street, Ste. 1000
Wilmington, DE  19801
302-652-3641
*Attorneys for Barbara R. Johnson*

DATED:  May 2, 2008