IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BARBARA R. JOHNSON,<br><br>Plaintiff<br><br>v.<br><br>NANTICOKE MEMORIAL HOSPITAL, INC., AND NANTICOKE HEALTH SERVICES, INC.<br><br>Defendants. | )<br>)<br>)<br>)<br>)  C. A. No. 07-CV-00685 (SLR)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR JUDGMENT ON THE PLEADINGS**

Michael P. Migliore, Esquire (Del. Bar #4331)
STRADLEY RONON STEVENS & YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 576-5850

and

Patrick R. Kingsley, Esquire (Admitted *Pro Hac Vice*)
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

Attorneys for Defendants,
Nanticoke Memorial Hospital, Inc. and
Nanticoke Health Services, Inc.

Dated: May 9, 2008

L # 751298 v.2

# **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. THE COURT MAY CONSIDER ALL THE PLEADINGS ............................... 1

III. THE ORDINARY DIVORCE ORDER IS NOT A QDRO ............................... 1

IV. IT IS NOT "TOO LATE" FOR NANTICOKE TO TREAT THE
 ORDINARY DIVORCE ORDER AS ORDINARY ......................................... 4

V. PLAINTIFF HAS FAILED TO ALLEGE EQUITABLE ESTOPPEL............ 5

VI. CONCLUSION....................................................................................................... 7

# TABLE OF CITATIONS

**CASES**

Acierno v. Haggerty, No. 04-1376-KAJ, 2005 WL 3134060 (D. Del. Nov. 23, 2005) ................... 1

Curcio v. John Hancock Mut. Life. Ins. Co., 33 F.3d 226 (3d Cir. 1994) ........................ 5

Files v. ExxonMobil Pension Plan, 428 F.3d 478 (3d Cir. 2005) .................................... 4

Hauge v. Brandywine Sch. Dist., 131 F. Supp. 2d 573 (D. Del. 2001) ........................... 1

Jordan v. Jordan, 147 S.W.3d 255 (Tenn. App. 2004) ............................................... 4

Moore Business Forms, Inc. v. Cordant Holdings Corp., No. 13911, 1996 WL 307440 (Del. Ch. 1996) ........................................................................... 5

Nye v. University of Delaware, No. 02C-12-065JRJ, 2003 WL 22176412 (Del. Super. 2003) ........................................................................... 5

Smith v. Estate of Smith, 248 F. Supp. 2d 348 (D.N.J. 2003) ...................................... 2-3

Songy v. Songy, 738 So.2d 122 (La. App. 1999) ...................................................... 6

U.S. Life Ins. Co. in City of N.Y. v. Withrow, No. 07-511-LPS, 2008 WL 281029 (D. Del. Jan. 31, 2008) ........................................................................ 5

**STATUTES**

29 U.S.C. § 1056 ........................................................................................ 2-4

L # 751298 v.2

I.  **INTRODUCTION**

In its Opening Brief, Defendants Nanticoke Memorial Hospital, Inc. and Nanticoke Health Services, Inc. ("Nanticoke") demonstrated that Plaintiff lacks standing to pursue an ERISA claim. Plaintiff now suggests that her Divorce Stipulation and Order ("ordinary Divorce Order") meets the ERISA-definition of a qualified domestic relations order ("QDRO"). Plaintiff is incorrect. The ordinary Divorce Order, by its terms, does not – and cannot – qualify as a QDRO. Indeed, a separate QDRO was entered as part of the Plaintiff's divorce, clearly demonstrating that the ordinary Divorce Order is *not* a QDRO. As shown below, Plaintiff's argument is without merit and the Court should grant Defendants' Motion for Judgment on the Pleadings.

II.  **THE COURT MAY CONSIDER ALL PLEADINGS**

Plaintiff initially protests that the Court should not consider factual allegations presented in Nanticoke's Answer, citing no law in support of her position. To the contrary, in reviewing Nanticoke's motion for judgment on the pleadings, the court may consider facts from all pleadings, including Nanticoke's Answer. See Hauge v. Brandywine Sch. Dist., 131 F. Supp. 2d 573, 575 (D. Del. 2001); see also Acierno v. Haggerty, No. 04-1376-KAJ, 2005 WL 3134060, at *5-6 (D. Del. Nov. 23, 2005) (explaining that the court is not strictly limited to facts in the pleadings, and may take notice of exhibits to pleadings and other public records, including judicial decisions and complaints and answers in other matters). Thus, the Court may properly consider the Plaintiff's Complaint, exhibits attached thereto, and Nanticoke's Answer.

III.  **THE ORDINARY DIVORCE ORDER IS NOT A QDRO**

Plaintiff argues that the ordinary Divorce Order is a QDRO that grants her ERISA standing. (Pl. Answering Brief at 1.) In asserting this argument, Plaintiff relies exclusively on

Smith v. Estate of Smith. 248 F. Supp. 2d 348 (D.N.J. 2003). Plaintiff cites no decision from the District of Delaware or Third Circuit. Even if Smith were controlling, Plaintiff's argument fails. While the operative language in the Smiths' divorce order ("Smith Order") met the ERISA statutory requirements of a QDRO, Plaintiff's ordinary Divorce Order still does not. The Smith Order is distinguishable from Plaintiff's ordinary Divorce Order for four statutory reasons, all of which render Plaintiff's ordinary Divorce Order statutorily deficient.

First, the QDRO statute requires a divorce order to specify "the name and mailing address of each alternate payee." 29 U.S.C. § 1056(d)(3)(C)(i). The Smith Order expressly identified "Barbara Smith, residing as 114 Gillison Avenue...." Smith, 248 F. Supp. 2d at 356. Plaintiff's ordinary Divorce Order does not contain any such provision. Plaintiff quotes language in her ordinary Divorce Order that she is "the sole owner of the Seaford property" – which confirms only that Plaintiff received this property in the distribution of marital assets. Plaintiff's ordinary Divorce Order does not state where Plaintiff *resides*. It does not establish her residence or mailing address and, therefore, cannot be a QDRO. Smith supports this distinction.

Second, the QDRO statute requires that the divorce order specify "the amount or percentage of the participant's benefits *to be paid by the plan* to each such alternate payee." 29 U.S.C. § 1056(d)(3)(C)(ii) (emphasis added). The operative language in the Smith Order gave Mrs. Smith an irrevocable assignment of half of Mr. Smith's pension and expressly authorized Mr. Smith's employer to pay the 50% entitlement directly to Mrs. Smith. Smith, 248 F. Supp. 2d at 356. In contrast, Plaintiff's ordinary Divorce Order in this case does not direct Nanticoke to make any distributions directly to Plaintiff. (Divorce Order, ¶ 7(d).) Further, it does not make an express assignment of ownership in the ARUDCA to Plaintiff. To the contrary, it states that "*[t]his account may not be divided.*" (Id.) Although it provides that "[i]t is the objective of the

parties that Wife and Husband will divide the account 50/50," it does not create separate ownership in Plaintiff. This "understanding" between Plaintiff and her ex-husband is not an obligation of the plan.

Third, the QDRO statute requires that the divorce order specify the number or period of payments. 29 U.S.C. § 1056(d)(3)(C)(iii). A divorce order cannot be deemed a QDRO if it requires a plan "to provide any type or form of benefit, or any option, not otherwise provided under the plan." 29 U.S.C. § 1056(d)(3)(D)(i). Plaintiff's ordinary Divorce Order does not fix a number or period of payments to Plaintiff, but rather gives Plaintiff the option to seek an annuity or lump sum payment. (Divorce Order ¶ 7(d).) Plaintiff points out that in Smith, the court met the "number or period of payments" requirement by utilizing the payment terms of the underlying retirement plan. Smith, 248 F. Supp. 2d at 356. The underlying plan here permits only quarterly payments to Hancock, and does not enable him to receive his benefits in a lump sum. (ARUDCA at 3.) Significantly, by looking to the underlying plan, it is clear that the ordinary Divorce Order impermissibly seeks to change the terms of the underlying plan by offering Plaintiff more payment options than those granted to Hancock. This is expressly forbidden by the QDRO provisions of ERISA and further confirms that the ordinary Divorce Order cannot be a QDRO.

Finally, and most importantly, the ordinary Divorce Order expressly contemplates that QDROs be created for a number of Hancock's *other retirement plans*. (See Divorce Order, ¶ 7(c).) This could not more clearly demonstrate that the Divorce Order is not and cannot be a QDRO. Plaintiff's suggestion that the ordinary Divorce Order is a QDRO runs counter to its own terms. Since the ordinary Divorce Order specifically requires that Plaintiff and Hancock

L # 751298 v.2

craft QDROs for other retirement plans, it would be logically impossible to find that the ordinary Divorce Order is itself a QDRO.

For these reasons, as well as those detailed in Nanticoke's Opening Brief, the ordinary Divorce Order does not meet the statutory definition of a QDRO.

## IV.    IT IS NOT "TOO LATE" FOR NANTICOKE TO TREAT THE ORDINARY DIVORCE ORDER AS ORDINARY

In her Answering brief, Plaintiff claims it is "too late" for Nanticoke to treat the ordinary Divorce Order as what it is – an ordinary Divorce order. Plaintiff details the ERISA "qualification" process, which is triggered by the receipt of a divorce order. 29 U.S.C. § 1056(d)(3)(G)(i). This portion of ERISA offers Plaintiff no relief for two reasons.

First, Plaintiff does not allege in her Complaint that Nanticoke received a copy of the ordinary Divorce or received a request from Plaintiff to review her ordinary Divorce Order for qualification. Plaintiff merely alleged that "Defendants paid benefits under the Plan to Plaintiff from February 18, 2005 to April 17, 2006 without withholding FICA taxes from distributions." (Compl. ¶ 9.) However, Nanticoke made clear that "on a voluntary basis, as an accommodation to Mr. Hancock, [it sent] a portion of Mr. Hancock's benefits to Plaintiff." (Answer ¶ 8.) This accommodation does not transform the ordinary Divorce Order in a QDRO.

Second, unless the Plan concludes the Divorce Order is a QDRO, the presumption is that the ordinary Divorce Order is not a QDRO. Where a plan receives a divorce order and does not make a favorable determination of qualification within eighteen months, "the putative alternate payee loses the right to uphold payment of plan proceeds." Files v. ExxonMobil Pension Plan, 428 F.3d 478, 490 (3d Cir. 2005); see 29 U.S.C. § 1056(d)(3)(G)(iii); Jordan v. Jordan, 147 S.W.3d 255, 262 (Tenn. App. 2004) (until plan administrator finds domestic relations order is qualified, court order cannot be enforced under ERISA); (Pl. Answering Brief

- 4 -

at 3.) In other words, unless the plan administrator concludes otherwise in eighteen months, an ordinary divorce order is just an ordinary divorce order. Plaintiff has not alleged that either Nanticoke or a court determined that the ordinary Divorce Order is a QDRO. Since more than eighteen months have passed since February 2005, Nanticoke may continue to treat the ordinary Divorce Order as what it truly is – an ordinary divorce order. Contrary to Plaintiff's argument, the passage of eighteen months does not preclude Nanticoke from treating the ordinary Divorce Order as ordinary. It precludes Plaintiff from arguing that the ordinary Divorce Order is a QDRO.

## V.   **PLAINTIFF HAS FAILED TO ALLEGE EQUITABLE ESTOPPEL**

To successfully assert equitable estoppel, Plaintiff must show that (1) *Nanticoke* made a material representation, (2) Plaintiff reasonably and detrimentally relied on the representation, and (3) extraordinary circumstances are present. See Curcio v. John Hancock Mut. Life. Ins. Co., 33 F.3d 226, 236 (3d Cir. 1994). Plaintiff's equitable estoppel argument is premised entirely on an alleged "representation" made by Edward Hancock in the ordinary Divorce Order. This argument fails for at least five reasons.

First, Hancock was not acting in his official capacity on behalf of Nanticoke in negotiating and signing his divorce order. He was acting as Plaintiff's soon-to-be-ex-husband in a purely personal role. Nanticoke received no consideration and had no interest in the execution of the ordinary Divorce Order. Nye v. University of Delaware, No. 02C-12-065JRJ, 2003 WL 22176412, *7 (Del. Super. 2003) (explaining that acts are considered outside the scope of one's employment when carried out for an employee's own personal motives and benefit and not for his employer); see also Am. Jur. Agency § 75 (scope of agent's authority limited to principal's delegation). Thus, the language in the divorce order is not a representation by Nanticoke.

Second, Nanticoke was not a party to the ordinary Divorce Order, so Nanticoke cannot be bound by its terms. See U.S. Life Ins. Co. in City of N.Y. v. Withrow, No. 07-511-LPS, 2008 WL 281029, *5-6 (D. Del. Jan. 31, 2008) (stipulated judgment that contains no consideration is not a contract, and is not enforceable); Moore Business Forms, Inc. v. Cordant Holdings Corp., No. 13911, 1996 WL 307440, at *2 (Del. Ch. 1996) (dismissing equitable estoppel claim against defendants who were not parties to contract); see also Songy v. Songy, 738 So.2d 122 (La. App. 1999) (domestic relations agreement, not being a QDRO, was only binding as to parties and could not be enforceable against employer).

Third, Nanticoke has not made or broken any promises to Plaintiff. Plaintiff is still entitled to her portion of Hancock's ARUDCA payments, as provided by her ordinary Divorce Order. (Divorce Order, 7(d).) It is Hancock, however, who is responsible for making those payments to Plaintiff, not Nanticoke. Nanticoke's earlier accommodation, requested by Hancock, *not Plaintiff*, has no bearing on any alleged obligation Nanticoke has to Plaintiff. Plaintiff does not point to any language in her ordinary Divorce Order that instructs otherwise, nor could she.

Fourth, Plaintiff cannot, as a matter of law, establish reasonable reliance. The ordinary Divorce Order set forth only post-nuptial obligations of Hancock, not Nanticoke. Plaintiff negotiated the terms with Hancock, who was the plan participant, not administrator. Plaintiff turns ERISA law on its head by alleging that Hancock, as the plan participant, "ultimately controlled" his own plan. (Pl. Answering Brief at 8.) Reviewing, approving and implementing QDROs is exclusively in the province of plan administrators. See Jordan, 147 S.W.3d at 262. In addition, Plaintiff was well aware that her ordinary Divorce Order had specific QDRO requirements for Hancock's other retirement plans, and did not include a specific

QDRO provision for the ARUDCA. (Compare Divorce Order 7(c) and (d).) Those were the terms Plaintiff negotiated, with the assistance of counsel. It is absurd for her to now claim that Nanticoke should have alerted her that *her own* ordinary Divorce Order was not a QDRO and did not provide for a QDRO for the ARUDCA. (See Pl. Answering Brief at 8.)

Fifth, there are no extraordinary circumstances creating an estoppel. In this case, Plaintiff alleges Nanticoke made a highly technical tax error, resulting in a relatively minor tax consequence, to which she now objects. Even if this error was extraordinary -- which it is not, according to the very case law cited by Plaintiff -- it in no way relates to an alleged misrepresentation. There are no extraordinary circumstances creating an estoppel. Accordingly, this estoppel argument is deficient and should be rejected.

## VI. CONCLUSION

For the foregoing reasons, and those reasons detailed in Nanticoke's Opening Brief, the Court should grant Nanticoke's Motion for Judgment on the Pleadings.

Respectfully submitted,

_____
Michael P. Migliore, Esquire (Del. Bar #4331)
STRADLEY RONON STEVENS & YOUNG, LLP
300 Delaware Avenue, Suite 800
Wilmington, DE 19801
(302) 576-5850
mmigliore@stradley.com

and

Patrick R. Kingsley, Esquire (Admitted *Pro Hac Vice*)
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA 19103
(215) 564-8000

Attorneys for Defendants,
Nanticoke Memorial Hospital, Inc. and
Nanticoke Health Services, Inc.

Dated: May 9, 2008

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the *Defendants' Reply Brief in Support of Its Motion for Judgment on the Pleadings* was caused to be served on May 9, 2008 on the counsel for Plaintiff Barbara R. Johnson by means of hand delivery and via electronic service by way of the Court's CM-ECF filing system.

(Via hand-delivery)
Eric M. Andersen
Cooch and Taylor
824 N. Market Street, Suite 1000
Wilmington, DE 19801
(Counsel for Plaintiff)

_____
Michael P. Migliore (DE Bar #4331)

L # 753551 v.1